9174

HARRISON, AS ADMR., v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(86 S. E. 5.)

MASTER AND SERVANT — TELEPHONE COMPANIES — LINEMEN. — Where a telephone company provided a reasonably safe place and way for its linemen to perform the work of constructing and repairing its lines, it cannot be expected to have anticipated the possible consequences of an improbable use of other methods and ways by a lineman in the performance of his work, and is not negligent in failing to guard against the same.

Before PRINCE, J., Spartanburg, May, 1914.   Reversed.

Action by John A. Harrison, as administrator of the estate of James Harrison, deceased, plaintiff, against Southern Bell Telephone and Telegraph Company, defendant.

From judgment for plaintiff, defendant appeals. The facts are stated in the opinion.

*Messrs. Brutus J. Clay* and *Bomar & Osborne,* for appellant, cite: *There was no evidence excusing deceased's use of the guy wire:* 85 S. C. 372.   *No actionable negligence operating as a proximate cause:* 85 S. C. 338.   *Deceased violated rules of caution prescribed to govern his work:* 82 S. C. 548; 70 S. C. 252; *and was guilty of contributory negligence as*

FOOTNOTE.—As to master's duty to linemen and other employees to prevent contact with wires carrying electric current, see note in 52 L. R. A. (N. S.) 600.

*matter of law:* 94 S. C. 145; 85 S. C. 372; 77 S. C. 341, 342; 98 S. C. 496. *Assumption of risk:* 86 S. C. 72; 86 S. C. 179; *Ib.* 235; 78 S. C. 479; 72 S. C. 348; 80 S. C. 238; 55 S. C. 488. *Deceased adopted an obviously unsafe way of doing the work, and is thereby guilty of contributory negligence as matter of law:* 86 S. C. 72; 89 S. C. 505; 77 S. C. 335. *Charge on facts:* 97 S. C. 110. *Remarks refusing nonsuit:* 87 S. C. 410; 81 S. C. 379.

*Messrs. Nicholls & Nicholls* and *Jno. Gary Evans,* for respondent, submit: *Issues for jury:* 93 S. C. 72; 96 S. C. 362; 81 S. C. 211; 92 S. C. 395; 89 S. C. 20. *Refusal of new trial:* 98 S. C. 42. *Remarks refusing nonsuit:* 84 S. C. 1; 72 S. C. 352.

August 24, 1915.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Defendant appeals from judgment for plaintiff for $5,000.00 damages for negligence causing the death of plaintiff's intestate, which occurred under the following circumstances: Deceased was employed by defendant as a lineman. His duties were to do general repair and constru tion work which includes installing telephones, the work at which he was engaged when the accident occurred.

Defendant's telephone wires are encased in a lead pipe, which is supported by a wire rope to which it is attached by rings placed at intervals. The whole is called the telephone cable, and the supporting wire rope is called the messenger. The cable is strung on poles along the street. On the same side of the street an electric power company has some wires which carry 2,300 volts of electric current. These are strung seven feet above the telephone cable, but not on the same poles. The insulation on them had become weather-beaten and had fallen off. Above the power wires there is a guy wire stretched along and fastened to the tele-

phone poles for a distance of four or five poles. It makes a gradual descent to the place where it is anchored in the earth. At the place where the accident occurred, it is seven feet above and nearly parallel to the power wires.

The work of installing a telephone consists in part in attaching what is called a twisted pair (that is, two telephone wires twisted together so as to make practically one wire) to the telephone wires in the cable. This connection is made at the "can," where the wires of the cable are exposed for that purpose. The twisted pair is then run through the rings supporting the cable, to keep it from sagging, and carried to a convenient point from which it may be stretched to the house in which the telephone is to be installed. To do this, the lineman rides the messenger by attaching himself to it by means of his safety, which is a leather belt around his body to which leather straps are attached with snaps at the ends, which are caught over the messenger. Thus supported, he works himself along the messenger and runs the twisted pair through the rings. He has also a hand line, which is an ordinary rope, one end of which is tied to the end of the twisted pair, and the other end is thrown through or over the limbs of trees, when these are encountered in the operation, and the twisted pair is pulled through or over the limbs.

Deceased was 37 years old, and had had several years experience as a lineman. He knew the dangers incident to the work in which he was engaged, and he knew of the power wires and their proximity to the cable.

He was sent to install a telephone in a house across the street from the situation above described. A short time afterwards, he was discovered hanging head downwards in his safety, suspended from the guy wire, with one foot caught under one of the power wires. Plaintiff alleges that a circuit was thereby made which sent the deadly current from the power wire through his body and the guy wire to the earth. His hand line, fastened to the twisted pair,

was lying on the ground directly under him. When first seen, he exhibited some signs of life, but was dead when taken down.

Plaintiff alleges that, to do the work required, he was obliged to climb a pole and suspend himself from the guy wire, which sagged with his weight, so that his foot came in contact with the power wire, and that defendant was negligent in placing the guy wire above and so near to the power wire.

Defendant contends that this allegation, upon which alone plaintiff's right to recover depends, is wholly unsustained by the testimony; and that the Court erred in refusing its motion for the direction of the verdict on that ground. There are numerous other assignments of error, but in the view which we take of this one, it will not be necessary to consider them.

There is not a particle of evidence tending to show any reason or necessity for deceased going upon the guy wire. The undisputed evidence is that the usual and proper way for him to have done the work, which was known to him, was by riding the messenger; and that, if he had done so, the accident would not have happened, as he would have been in no danger from contact with the power wire, which would have been seven feet above him, and any sagging of the messenger would have carried him still further from it. No reason whatever is given by any witness, nor is one suggested by the circumstances, why he went upon the guy wire. When asked why he might have gone there, the witnesses all said that they could not conceive of any reason. The only semblance of an explanation is found in the argument of respondent's attorneys: "The theory of the plaintiff is that in throwing his rope, with the wire attached, it became entangled with the wire above the high power wire, and deceased, in his efforts to disentangle the same, came in contact with the deadly current and was electrocuted."

But, if we assume the truth of this theory, it fails to show negligence on the part of defendant. The guy wire was not put there to be ridden by the linemen in the performance of their duties, and, in the construction of its lines, defendant can not in reason be expected to have anticipated and guarded against the possible consequence of such an improbable use of the guy wire.

Defendant owed deceased no duty at the place where he was injured, for, according to the uncontradicted testimony, he had no business there. *Stone* v. *R. Co.,* 96 S. C. 228, 80 S. E. 433. And, furthermore, if the plaintiff's theory be true, as an experienced lineman, deceased must have known that he was incurring great risk to attempt to disentangle his hand line in that way, especially when the testimony shows that he knew that, by telephoning to the power house, he could have had the current cut off, until he could go up and get it loose, and, also, that he could have cut it off himself by walking a few blocks and pulling out a plug. The evidence shows, too, that the linemen were required to have the current cut off, whenever it was necessary for them to come in dangerous proximity to the power lines.

The undisputed evidence is that defendant's method of constructing its lines, with respect to the safety of its linemen, is reasonably safe—even in view of the high degree of care and skill which is demanded by reason of the inherent danger which arises from the proximity of its wires to the power wires; and that, if the work had been done in the manner in which defendant contemplated and directed that it should be done, which was known to deceased, there was practically no danger of contact with the power wires.

Judgment reversed.