## Aljoe et al., Appellants, *v.* Penn Central Light & Power Co.

*Negligence—Light and power companies — Contributory negligence—Evidence—Nonsuit.*

1. Nonsuits are properly entered in actions against a light and power company for deaths of two workmen and injuries to another, neither of whom were employees of the company, where the evidence shows that the men were engaged at the time of the accident in drawing a steel cable under the line of the defendant, and in doing so they brought it either in contact with, or in close proximity to, an electric wire, causing the cable to be charged.

Argued October 8, 1924. Appeals, Nos. 93, 94 and 95, Oct. T., 1924, by plaintiff, from order of C. P. Cambria Co., Sept. T., 1922, Nos. 183, 184 and 186, refusing to take off nonsuit in cases of Mary E. Aljoe, Harold H. Aljoe and Matilda Sebring v. Penn Central Light & Power Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Trespass for death and for personal injuries. Before EVANS, P. J.

The opinion of the Supreme Court states the facts.

Nonsuits; refusal to take off. Plaintiff appealed.

*Errors assigned* were orders, quoting them.

*Charles J. Margiotti,* with him *W. M. Gillespie* and *Leech & Leech,* for appellants.

*J. Earl Ogle, Jr.,* with him *Harry J. Nesbit,* for appellee.

PER CURIAM, November 24, 1924:

The cases covered by these three appeals were tried together in the common pleas and presented in that way to

this court; disposing of them in like manner, we adopt the following excerpts from the opinion of the court below:

"About May 1, 1921, John E. Aljoe, Harvey Sebring and Harold H. Aljoe, were......[employed by a third party] to drill two bore holes at a certain location near the electric power-line of defendant company...... [Their] equipment was so set up by [these] parties that a wire rope, which was used in lifting pipe and lowering the derrick, would be drawn toward and under [defendant's] line......The end of this wire cable, to which there was attached about six feet of soft rope, was tied to a stump beyond the power-line from the apparatus when the rope was not in use. This rope had been carried from time to time under the power-line and tied to the stump by all three of the men. When the wire rope was drawn under the power-line, before being tied, it came within three to six inches of the [latter] and, when tied, was located probably three feet from [it]. This rope......passed through a pulley on a pole at a point about forty-two feet above the ground. The power-line was about twenty or thirty feet above the ground......From this situation it is quite apparent that if the ordinary drawing of the wire [rope] under the power-line brought it within three to six inches of the [latter] a very slight lift or swinging of the line would bring [the rope] either in contact with the...... line or in close proximity to it. On the morning of June 21, 1921, there was a heavy dew; sometime after [the men] had started to work [on that day], the rope above referred to became loose, so that it interfered with the drilling, and John E. Aljoe, with the assistance of Harvey Sebring, took the rope and started to carry it back to the stump beyond the power-line where they were accustomed to tie it, Harold Aljoe observing this being done and watching them until they were [within] about fifteen feet of the......line, he, at the time, working about the machinery......This is the last that Harold

Aljoe recalls until some time between nine and ten o'clock, when he recovered himself lying upon the ground about thirty feet from the place where he [had been] working. He got up and found Sebring and his father, John E. Aljoe, lying upon the ground, near the place where it was customary to tie the rope; he went for help, and then found that his father and Sebring were dead. [All three resided]......about half a mile from the place where they worked;......sometimes they went to work along the power-line and sometimes they went around the road. There were at least two signs [warning people of danger] on the poles of the electric company within the district they were covering, one located on a pole near the roadway and plainly discernible a short distance from the house at which they were boarding and past which they went in going to work by way of the road, the other at a point between the road and the place where they worked and which may or may not have been passed by the men in going to work. It further appeared that the construction of this company's power-line was the usual and modern type of construction. In addition to above, plaintiffs offered testimony that a man, whom they described as carrying an ax, passed over the right-of-way of defendant company and along its power-line about once a week, while they were working there, and urged that this man was presumably a patrolman or observer of the defendant company..... Plaintiffs also offered evidence tending to show that the wire cable had not come in immediate contact with the power-line, but that the electricity must have passed from the......line to the wire cable by arcing or jumping, and urged upon us that the tendency of electricity to arc or jump is not of common knowledge, and that this case should go to the jury for the further reason of having the jury determine whether notice should have been given by the defendant company of this dangerous tendency.......

"Upon [the above] facts plaintiffs claimed they had established sufficient evidence of negligence on part of defendant......to warrant submitting the case to the jury,......first, on the question as to whether or not defendant......should have had [warning] signs upon all of its poles, or more signs than it was......proved were actually found between the boarding house and the place of work; and, second, [on] the question whether or not defendant......was negligent in not giving notice to the three men that the power-line was dangerous ......., especially if the jury should find that the man who passed along the......line was the patrolman of defendant company.   [On the other hand,] motions for compulsory nonsuits were made at the close of plaintiffs' testimony on the grounds, first, that there was not sufficient evidence of negligence [by] defendant......to warrant submitting the case to the jury, and, second, ......that the [evidence] showed contributory negligence on part of John E. Aljoe, Harvey Sebring and Harold H. Aljoe, which would prevent recovery in each of the three cases.   [The trial judge overruled plaintiffs' contentions and entered nonsuits].

"All ordinary persons are [assumed] to know that it is dangerous to come in contact with, or in close proximity to, an electric wire.   How, in the face of plaintiffs' testimony, it [can] be contended that there was evidence of negligence on part of defendant.....to warrant submitting the case to the jury, we cannot see; but, even if there were sufficient evidence of [such] negligence ......., the evidence of contributory negligence upon part of the three men was such as to preclude recovery. It will be recalled [they] set up their equipment, and deliberately so placed it, that a steel cable would be drawn from time to time under the electric line of the defendant company and in close proximity to it (the witness Aljoe saying from three to six inches)...... Harold Aljoe, one of the plaintiffs, testified that all [three men] had, at different times, carried this wire

cable under the power-line, drawing it in close proximity [thereto], and that, on the morning of the accident he observed his coworkers starting again to draw the cable under the power-line and made no objection whatever. Such carelessness and disregard of their own lives and safety must necessarily prevent a recovery......The presumption that the deceased men used due care is of no effect in the face of the testimony......as to their reckless practice and in view of the fact that the accident could only happen as a result of their own acts in bringing the wire cable which they were carrying, in contact with, or in close proximity to, the electric line."

We find nothing to criticize in the above stated views; on the pleadings and evidence, the court below did not err in refusing to remove the nonsuits.

Judgments affirmed.