BENNO G. TROIDLE, Respondent, *v.* ADIRONDACK POWER
AND LIGHT CORPORATION, Appellant.

484

(Argued December 5, 1929; decided January 7, 1930.)

*Charles B. Sullivan* and *Neile F. Towner* for appellant. There is no evidence of negligence on defendant's part which caused plaintiff's injury. (*Hickok* v. *Auburn L., H. & P. Co.,* 200 N. Y. 464; *Haskell* v. *Auburn L., H. & P. Co.,* 209 N. Y. 86: *Magee* v. *N. Y. Telephone Co.,* 213 N. Y. 232; *Rowley* v. *Newburgh L., H. & P. Co.,* 151 App. Div. 65; *Adams* v. *Bullock,* 227 N. Y. 208; *Lyman* v. *Putnam Coal Co.,* 182 App. Div. 705; *Brown* v. *American Mfg. Co.,* 209 App. Div. 62; *Huscher* v. *N. Y. & Queens El. L. & P. Co.,* 158 App. Div. 422; 165 App. Div. 241; *Coons* v. *N. Y. Tel. Co.,* 249 N. Y. 42; *Reardon* v. *Florida West Coast Power Co.,* 120 So. Rep. 842; *State* v. *Eastern Shore Gas & Elec. Co.,* 142 Atl. Rep. 503.) The evidence fails to establish that plaintiff was free from contributory negligence. (*Basmazian* v. *Bd. of Education,* 211 App. Div. 347; *Hickok* v. *Auburn L., H. & P. Co.,* 200 N. Y. 464; *Haskell* v. *Auburn L., H. & P. Co.,* 209 N. Y. 86; *Magee* v. *New York Telephone Co.,* 213 N. Y. 232; *Rowley* v. *Newburgh L., H. & P. Co.,* 151 App. Div. 65; *Geer* v. *N. Y. & Penn. Tel. & Tel. Co.,* 144 App. Div. 874;

*Lyman* v. *Putnam Coal & Ice Co.*, 182 App. Div. 705; *Brown* v. *American Mfg. Co.*, 209 App. Div. 621; *Huscher* v. *N. Y. & Queens El. L. & P. Co.*, 158 App. Div. 422; 165 App. Div. 241; *Coons* v. *New York Telephone Co.*, 249 N. Y. 42; *State* v. *Eastern Shore Gas & Electric Co.*, 142 Atl. Rep. 503; *Lanigan* v. *New York G. L. Co.*, 71 N. Y. 29; *McGuire* v. *New York Rys. Co.*, 230 N. Y. 23; *Ploxin* v. *Brooklyn Heights Ry. Co.*, 171 App. Div. 925; 220 N. Y. 609.) That plaintiff intended to hang his wire on defendant's wires and drag it across them determines the nature of his act as an intentional trespass. (*McAlpin* v. *Powell*, 70 N. Y. 126; *Miller* v. *Woodhead*, 104 N. Y. 471; *Strobel* v. *Liebman*, 197 N. Y. 348; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Birch* v. *City of New York*, 190 N. Y. 397.)

*Henry Hirschfeld* and *Edward J. Halter* for respondent. The failure of the defendant to keep its primary wires on plaintiff's land properly insulated constituted negligence and was a proximate cause of the injuries sustained by plaintiff. (*Braun* v. *Buffalo General El. Co.*, 200 N. Y. 484; *Casualty Co.* v. *Swett El. L. & P. Co.*, 230 N. Y. 199; *Burrows* v. *Livingston-Niagara Power Co.*, 217 App. Div. 206; 244 N. Y. 548; *Horning* v. *Hudson River Tel. Co.*, 111 App. Div. 122; 186 N. Y. 552; *Adams* v. *Bullock*, 227 N. Y. 208; *Olm* v. *N. Y. & Queens El. L. & P. Co.*, 188 App. Div. 19; *Speich* v. *International Ry. Co.*, 219 App. Div. 620; *Connell* v. *Keokuk El. Ry. & P. Co.*, 131 Iowa, 622; *Fitzgerald* v. *Edison El. Ill. Co.*, 200 Penn. St. 540; *McLaughlin* v. *Louisville El. L. Co.*, 100 Ky. 173; *Geissman* v. *Missouri-Edison El. Co.*, 173 Mo. 654; *Byerly* v. *Con. Light, P. & I. Co.*, 130 Mo. App. 593.) The act of the plaintiff in throwing his aerial over the wires of the defendant did not constitute contributory negligence as a matter of law. (*Braun* v. *Buffalo General El. Co.*, 200 N. Y. 484; *Palmer* v. *Dearing*, 93 N. Y. 7; *Casualty Co.* v. *Swett El. L. & P. Co.*, 230 N. Y. 199; *Fitzgerald* v. *Edison E. Ill. Co.*, 200 Penn. St. 540; *Mitchell* v. *Raleigh El. Co.*, 129 N. C. 166.)

KELLOGG, J. The plaintiff was the lessee of a small parcel of land upon the easterly portion of which there stood a dwelling house, at the west of which, about seventy-five feet therefrom, there was a garage. The defendant maintained an electric light pole upon the lot, near its southerly border, from which its transmission lines, passing between the garage and the house, extended northerly to a pole maintained by it upon a parcel of land which bounded the plaintiff on the north. Two sets of wires were maintained by the defendant, one set, elevated twenty feet above the ground, carrying a primary current of 2,300 volts, and another set, seventeen and one-half feet above the ground, carrying a secondary current of 110 volts. The poles had been erected, and the wires stretched, pursuant to authority obtained from the owner of the lot, and were maintained by the defendant in the exercise of a legal right. Both sets of wires were insulated with a weather-proof covering ordinarily employed in a like situation. To the east and west of these lines of wire the plaintiff had erected two poles, each of which was fifty-seven feet in height. They were one hundred and twenty-five feet apart and were designed to carry an aerial wire for a radio set to be installed in the dwelling house upon the premises which was occupied by the plaintiff. When the aerial was in position it would cross the defendant's wires at about a right angle and at an elevation above them of twenty feet. The defendant's wires were so located that no hazard was created, in the course of an ordinary use, either for those occupying the buildings on the lot or for those pursuing occupations of pleasure or business without the buildings.

On a certain day the plaintiff prepared to re-erect the aerial wire, which had been removed for the winter season, in order to connect up his radio set at the dwelling house. At each end of a metal wire one hundred feet long, intended to be used as an aerial, he fastened porcelain insulators, three to four inches in length and one inch in thickness. To each insulator he hitched a

sash cord about fifteen feet in length, and to the end of the cord, tied to the insulator on the end of the wire designed to be its easterly terminus, fastened a stone somewhat large and heavy. Having thus prepared himself, he took up a position at a point ten feet to the west of the defendant's lines. He wound the aerial wire into a large coil at his side, took the easterly insulator and the stone in his right hand and with his left hand held the sash cord in a coil. Thereupon, he heaved with his right hand, throwing the stone and the insulator, with the cord and wire following, upwards over the primary wires of the defendant, suspended twenty feet above the ground. As the end of the aerial came in contact with the defendant's wires, that part of the aerial which remained upon the ground uncoiled and struck against the plaintiff. As a result, a high voltage current of electricity passed into the plaintiff's body and serious injury was thereby inflicted upon him. The claim is made that the defendant was negligent in not so insulating its wires, and so maintaining the insulating material thereupon, that the dangerous current could not have escaped to the aerial wire.

We think that the defendant owed no duty to this plaintiff so to insulate its wires that, in an extraordinary and perilous situation of his own creation, in which he voluntarily placed himself, he might be immune from harm. (*Hickok* v. *Auburn L., H. & P. Co.*, 200 N. Y. 464; *Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Magee* v. *New York Tel. Co.*, 213 N. Y. 232; *Adams* v. *Bullock*, 227 N. Y. 208.) In *Hickok* v. *Auburn L., H. & P. Co.* (*supra*) the facts considered were these: An electric light corporation furnished light and power to the public buildings of a county. In the court yard, faced by the buildings, it had erected a pole to carry its wires. On the top of the pole an incandescent bulb of low candle power was placed to light the court yard. Nearby wires placed on the pole carrying a high voltage current of electricity were defectively insulated. A deputy sheriff,

in climbing the pole to replace the incandescent bulb with one of greater power, in order better to light the yard, came in contact with the high tension wires and received an electric current which caused his death. It was held that for his death no recovery might be had, since no duty of insulating the wires was owed to him. The court said: "As the case stands, therefore, the decedent was a volunteer, if not a trespasser, to whom the defendant owed no duty to keep the wires at the top of the pole safe and free from danger." If the plaintiff, in the case before us, had climbed the defendant's pole to lift the aerial over the primary wires and had been injured through contact therewith, he would have been a mere volunteer, if not a trespasser, to whom no duty was owed by the defendant, and, under the authorities cited, no recovery might have been had. We can perceive no difference arising from the fact that the plaintiff, instead of climbing the pole to place his body against the dangerous wires, without right, while standing upon the ground, threw the end of a naked aerial upon the wires above him, and so brought down the current to enter his body and cause him injury. Whether he went to meet the current, or brought the current to him, in either event he acted without a shadow of right. We think that, in the situation shown, the defendant owed to the plaintiff no duty of insulating its wires, that he might be protected against the perils of an action, deliberately performed by him, which was so extraordinary and unforeseeable.

We think, also, that the plaintiff, in throwing the aerial upon the defendant's wires, knowingly took his chances that the deadly current might be carried to his body. The plaintiff was a physician and a man of education. He was well experienced in things electrical. Such was his knowledge that he had been able, without help, to wire his own garage; to rewire his own house; and, upon many occasions, to set up his radio, making with his own hands all the difficult and complicated

electrical connections. During the summer months, for six years, he had occupied this property. It was scarcely possible that he was not aware of the fact that the defendant's wires, maintained in the same position throughout the period of his occupation, carried a primary current of high voltage. If possible, he failed to show by his testimony that the possibility was an actuality, although the burden so to do rested upon him. Moreover, the affirmative inference, that he was well aware of the presence of a dangerous current passing through the wire, clearly arose from the undisputed proof. The plaintiff attached the sash cords to the insulators at the ends of the aerial, intending to remove the cords when the radio wire had been erected. The inference readily lies that he so acted that he might with safety, when the radio wire rested on the transmission wires, pull the former across the latter and lift it to its proper place. He was careful to state, in giving his story on direct examination, that he took in his hands only the stone, the insulator and the sash cord; that at no time was any part of the aerial wire in his hands. Doubtless the plaintiff felt that, with the coil of radio wire at his side, no part of which was in contact with his body, he was safe in tossing the end of the wire across the defendant's wires. It was a mischance that the wire uncoiled to strike him. For that mischance, and for the miscalculation of the plaintiff that such a result would not befall, the defendant cannot be held liable.

The judgment of the Appellate Division and that of the Trial Term should be reversed and the complaint dismissed, with costs in all courts.

POUND, CRANE, LEHMAN, O'BRIEN and HUBBS, JJ., concur; CARDOZO, Ch. J., concurs in the result on the ground that the defendant was not proved to have been negligent in that the insulation was not shown to be inadequate in view of the contingencies reasonably to be foreseen.

Judgments reversed, etc.