GILDON HOLDING CORPORATION, Plaintiff, *v.* NEW YORK AND QUEENS TRANSIT CORPORATION, Defendant.

Municipal Court of New York, Borough of Manhattan, Fourth District, December 30, 1935.

*William Weisman,* for the plaintiff.

*Mumma, Costabel & Cloutman* [*Harold Cloutman* of counsel], for the defendant.

LEFKOWITZ, J. The plaintiff sued the defendant for damages alleged to be the result of the defendant's negligence in operating its electric system in connection with its trolley line. The plaintiff charges the defendant " failed and neglected " to keep the electric system " in proper condition and repair " and that the defendant " suffered the same to be defective and insufficient for the purpose for which it was constructed, so that electric currents have escaped therefrom," etc. The charge is that these electric currents which have so escaped have damaged the underground water mains of the plaintiff.

The elements of a cause of action in negligence are well established. Implicit in a charge of negligence is the assertion that the defendant has neglected to do that which usually can be and is done. And that must be proven by the complainant.

The plaintiff is not suing the defendant for maintaining a nuisance or for any other cause than that of negligence. The distinction is important. As the Appellate Division in this department said in *Glover* v. *Holbrook, Cabot & Rollins Corp.* (189 App. Div. 328): " Nuisance consists in the wrongful maintenance of the thing itself, while negligence usually consists in the manner of doing the thing. In nuisance, it is the wrongful or unlawful maintenance of the thing resulting in damage to others that gives the right of action, irrespective of whether its operation was careful or careless; while in negligence, it is the careless operation of the thing whereby others are damaged, irrespective of whether it is lawful or unlawful. Therefore, that the defendant exercised due care in maintaining the nuisance would be no defense, while that it was

lawfully maintained would be. That the defendant observed due care would be a defense in an action predicated upon negligence, but that he was lawfully authorized to operate the thing would be no defense."

Bearing the said distinctions in mind, a consideration of the testimony would compel the conclusion that the plaintiff did not prove its charge and theory of negligence against the defendant, in the above-quoted language from its complaint or otherwise.

There was no proof whatever that a trolley line operated by means of such an electric system as defendant employs is usually constructed or operated in a manner different than does this defendant. The power is communicated by the defendant's electric system to the trolley cars as follows: The electricity is generated in its power station, is transmitted therefrom by overhead wires, and from the wire by a pole attached to the trolley car to the motors, and therefrom to the wheels of the car and to the car tracks; and the current passes along the car tracks back to the power station. Some of the current leaves the tracks and enters the ground underneath. The plaintiff's water pipes which connect its building to the city main pipes extend and are located beneath the defendant's tracks. Some of the electric power escaping from the tracks comes in contact with the plaintiff's water pipes, which were of lead, and caused what is described as electrolysis corrosion and caused them to break on several occasions, requiring their repair.

Not only was there no proof that the defendant's said power system may be constructed so as to prevent the escaping current, but the proof, on the contrary, suggested that escaping current is a well-known incident in the operation of such systems. The plaintiff's expert witness testified, under cross-examination, that escaping current is the usual thing and that it was practically a physical impossibility to construct a system to prevent it.

The plaintiff completely failed to prove the above-quoted charge in its complaint that the defendant neglected to keep its system and lines " in proper condition and repair " and that it permitted the same " to be defective and insufficient."

There was no suggestion or proof that the defendant maintained its road or system illegally or that it was a trespasser in the street, and, on the contrary, we may assume that the defendant operated legally and under some valid franchise or authority.

It is also to be noted that the plaintiff constructed its building and its radio station long after the defendant's lines were established. The plaintiff, therefore, came to the location charged with the knowledge of the existence of the defendant's lines and power system.

In view of the plaintiff's business and its construction and operation of a radio transmitting station, one that is well known in the community, it would be assumed that the plaintiff and its experts knew of the manner in which the defendant operated its power system and that it also knew of the usual escape of power from the tracks into the ground as an incident to defendant's power system. The plaintiff's technical contractor, who had charge of the construction of its radio station, qualified as an expert and testified that he had constructed " a prize-winning plant." Surely, therefore, plaintiff may be charged with full knowledge of the character of the defendant's power transmission system and the above-mentioned incidents thereof.

If one may speak of negligence, may one, therefore, rather not charge the plaintiff instead of the defendant therewith.

In that connection, it may be well to refer to some recent decisions by the Court of Appeals.

For instance, in *Troidle* v. *Adirondack Power & Light Corp.* (252 N. Y. 483) the Court of Appeals reversed and dismissed a complaint which charged the defendant with negligence in the maintenance and operation of its power transmission wires. It appeared (at bottom of p. 488) that the plaintiff there was a man of education, well experienced in things electrical, that he had been able without help to wire his own garage, to set up his radio and make all difficult and complicated electrical connections. Upon the basis of the said facts, the comment of the Court of Appeals was (at top of p. 489): " It was scarcely possible that he was not aware of the fact that the defendant's wires, maintained in the same position throughout the period of his occupation, carried a primary current of high voltage." In further confirmation of the above finding in the instant case, that the defendant has not been proven negligent may be quoted the brief concurring comment of Chief Judge CARDOZO in that case (at p. 489): " on the ground that the defendant was not proved to have been negligent in that the insulation was not shown to be inadequate in view of the contingencies reasonably to be foreseen."

At the same term the Court of Appeals also decided the case of *Van Leet* v. *Kilmer* (252 N. Y. 454). In that case the court also reversed and dismissed the complaint, holding that the defendant was not negligent in the maintenance of his power-transmitting wires. The opinion concludes as follows (at p. 458): " Remote possibility of injury was not completely excluded. This is apparent from the fact that contact with plaintiff's intestate produced a shock at least strong enough to startle him and cause him to fall from the ladder, but we think, as matter of law, that defendant is

not shown to have omitted any safeguard against danger which could reasonably be foreseen." (See, also, *Buell* v. *Utica Gas & Electric Co.*, 259 N. Y. 443.)

The parties here have drawn to the attention of the court the case of *Peoria Water Works Co.* v. *Peoria Ry. Co.* (181 Fed. 990), decided in the Circuit Court in Illinois. The very wealth of proof that was presented in that case emphasizes the meagerness of the proof in the instant case. That was an action very similar to the instant one and sought an injunction against the railroad company to require it to prevent escaping electric current which was claimed to be injuring the plaintiff's water pipes. A limited decree was granted against the defendant. But the case is distinguishable from the instant one because the proof there was specific and elaborate, which it is not here. And in that case one of the findings was (at top of p. 996) that " The evidence discloses no known method by which the complainant by its own action can protect its water distributing system of pipes and mains from the electrical currents of the defendants' single trolley railways." In the instant case the proof is definitely otherwise. Plaintiff's proof is to the effect that, as soon as it placed insulating joints upon its pipes, all damage ceased. The expert whom the plaintiff called testified that as soon as he made an inspection he advised that remedy. And plaintiff's technical contractor, to whom we have heretofore referred, testified under cross-examination that " we have had no trouble at all since the insulating joints were installed." Plaintiff's plumber, who repaired the pipes, testified, under cross-examination, that " there has been no trouble since then." " Q. That cured all this trouble? A. It seems to be."

The plumber, incidentally, testified that he charged thirty-one dollars for the insulating joints and that that was the fair and reasonable value thereof.

This comparatively slight cost for a sure remedy for the condition of which the plaintiff complains is a further comment upon the entire case. Surely the plaintiff may and should have known thereof and should have resorted to it before spending several hundred dollars on the situation.

But, in any event, I feel that the plaintiff has not proven that the defendant was guilty of any negligence. That is the plaintiff's theory of suit. A judgment dismissing the complaint should, therefore, follow, without prejudice to the commencement of a new action on a different theory, if plaintiff be so advised.