**BURNS et al. v. CAROLINA POWER & LIGHT CO.**

No. 6329.

United States Court of Appeals Fourth Circuit.

Argued Nov. 8, 1951.

Decided Dec. 29, 1951.

John L. Nettles and James P. Mozingo, III, Darlington, S. C. (F. Turner Clayton, Darlington, S. C., on brief), for appellants.

A. Y. Arledge, Raleigh, N. C. (Charles F. Rouse, Raleigh, N. C., on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and MOORE, District Judge.

DOBIE, Circuit Judge.

Burns and Nolan filed civil actions in a State Court of South Carolina against J. M. Daley and the Carolina Power and Light Company (hereinafter called Power Company), which were removed to the United States District Court for the Eastern District of South Carolina. The two cases have been consolidated for appeal. Since they involve the same facts, except as to the extent of the injuries, and the same principles of law, we shall consider only the Burns case.

The case was removed to the District Court on the grounds that the complaint did not state a joint cause of action against the resident defendant, J. M. Daley, and Power Company, and did not state a cause of action against the defendant J. M. Daley. On a Petition to Remand, the District Judge sustained the Power Company's contention, and dismissed Daley from the case D.C., 88 F.Supp. 767. Subsequently a trial was had against the Power Company alone. The case was submitted to a jury after the refusal by the Court to grant the defendant's motion for a directed verdict, and a mistrial was had as a result of the inability of the jury to reach a verdict. The motion for directed verdict was then renewed by the Power Company and was granted by the District Judge.

It is alleged in the complaint that Power Company, a public service corporation, served the plant of Consumer's Brick Yard (which was owned and operated by Jones Construction Company), with electricity; and in order to do so it maintained on the premises of Consumer's Brick Yard poles, wires, transformers and other equipment. The plaintiff alleges that he was an employee of Consumer's Brick Yard and on August 17, 1948, was engaged with other employees in unloading a car of coal which was located on an elevated railroad track

on the plant premises. The track was parallel to, and approximately 168 feet from, Power Company's power lines.

A crane with a clam shell bucket and a boom 45 feet long were being used to unload the coal, and it became necessary to replace a block on a "monkey line" running from the cab of the crane to the end of the boom and the clam shell. In order to replace the block, the boom was lowered for access to the men working on the ground. While the plaintiff was standing on the ground and holding the "monkey line", the boom was raised by the operator of the crane, J. M. Daley, up and into contact with the power line of Power Company. Electricity thereby was conducted to plaintiff through the metal "monkey line" and injured him seriously.

Power Company's transmission line originally was constructed and at the time of the accident was maintained upon its right of way. It consisted of three bare wires suspended overhead between wood poles, together with appurtenant facilities. The line and right of way were remote from the buildings and other facilities at the brick yard, and the line had been maintained and operated at this location for more than twenty years. At the scene of the accident, the wires were more than 20 feet above the ground. The line was maintained and operated in accordance with all statutory requirements, including the rules and regulations of the South Carolina Public Service Commission.

Prior to the accident, it seems, no crane or similar equipment had ever been operated at the brick yard beneath the transmission line, nor had any other operations thereof taken place under the line within Power Company's right of way. Power Company had no actual knowledge that a crane was being operated in connection with the unloading of coal at the coal trestle, which was located more than 150 feet on the north side of its line. Moreover, a crane had apparently never been used for that purpose until a few weeks prior to the accident, when a crane was employed there because of an emergency resulting from coal strikes. There appears

to have been no necessity for that crane to be operated beneath Power Company's line or nearer to it than its place of use at the coal trestle. Despite the allegations in the complaint, the presence of the crane beneath the line at the time of the accident is not satisfactorily explained by the evidence. The manager of the brick yard testified that there was no reason or necessity for it to be there on that occasion. The transmission line was in open and unobstructed view, and upon cross-examination, Burns and J. M. Daley each testified that, although he did not see the wires prior to the accident, he could have seen them if he had looked, but he did not look.

We are faced on this appeal with two questions: (1) Did the District Judge err by failing to remand the case to the State Court; and (2) Did the District Judge err in directing a verdict in favor of the defendant, Power Company?

We think the District Judge erred in holding that the complaint did not state an ordinary cause of action against Daley, the crane-operator, based on negligence. Thus the complaint states that Daley was negligent in these particulars:

"10. (a) In that said defendant J. M. Daley raised said boom without ascertaining whether it was reasonably safe to do so, and in failing to look to observe the position of said crane, and in failing to stop raising same when danger became imminent and apparent.

"(f) In that said J. M. Daley failed to release said boom at any time before or after the same came in contact with said lines conducting said electricity.

(k) In that said J. M. Daley failed to use due care in placing said crane in a position where it could not come in contact with said high voltage lines.

"(1) In that said J. M. Daley failed to use proper care in watching out for said high voltage lines when raising said boom." Even though the complaint may have been subject to a motion to make more definite and certain, yet it did state a cause of action against Daley based on his negligence. See, Ostrom v. Edison, D.C., 244

F. 228; Albi v. Street & Smith Publications, 9 Cir., 140 F.2d 310; Locke v. St. Louis-San Francisco Railway Co., 8 Cir., 87 F.2d 418. And we might point out that the District Judge, in his order directing a verdict for Power Company, stated: "Daley's act in raising the boom without looking overhead is another instance of gross negligence." Again, the District Judge, in his charge to the jury, said: "If we were trying a case against the Jones Construction Company or Daley, then you would have a clear case to decide."

 We think, however, the remand was properly denied on the ground that Burns, having claimed and received compensation under the South Carolina Workmen's Compensation Act from his employer, has no cause of action against Daley. Thus Section 7035-10, Code of Laws of South Carolina, 1942, is as follows: *"Employer secure payment of compensation—extent of liability.*—Every employer who accepts the compensation provisions of this article shall secure the payment of compensation to his employees in the manner hereinafter provided; and while such security remains in force, he or those conducting his business shall only be liable to any employee who elects to come under this article for personal injury or death by accident to the extent and in the manner herein specified."

The phrase "those conducting his business", contained in the Statute is broad enough to include Daley.

There appear to be no South Carolina cases interpreting this phrase "those conducting his business" as it is used in the South Carolina Workmen's Compensation Act. In another phase of this same case, the District Judge said Burns v. Carolina Power & Light Co., D.C., 88 F.Supp. 769, 773: "South Carolina was one of the latest states in the union to adopt a compensation act and when it did, it followed the North Carolina act almost verbatim, and therefore the North Carolina Court constructions have received an especial consideration in this state and the Supreme Court of South Carolina has frequently referred to North Carolina decisions with approval and followed them as useful guides."

In two cases, interpreting this phrase, the Supreme Court of North Carolina has made it clear that there could be no cause of action here against a fellow employee. Bass v. Ingold, 232 N.C. 295, 60 S.E.2d 114; Essick v. Lexington, 232 N.C. 200, 60 S.E.2d 106. A like conclusion was reached under the Virginia Workmen's Compensation Act, which contains the identical phrase: "those conducting his business", in an elaborate opinion by Mr. Justice (now Chief Justice) Hudgins, in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73. With the conlusion reached in those three cases, we heartily agree.

 We think the District Judge was correct in directing a verdict in favor of the defendant, Power Company. Counsel for defendant contend that this was proper on the score that Burns failed to establish compliance with the pertinent provisions of the South Carolina Workmen's Compensation Act necessary to vest him with the right to institute an action against Power Company. See, Code of Laws of South Carolina (1942), Sections 7035-11 and 7035-12. See, also, Dawson v. Southern Railway Co., 196 S.C. 34, 11 S.E.2d 453. We prefer, however, to rest our decision on the fact that there was not sufficient evidence showing negligence on the part of the defendant, Power Company, to take this question to the jury.

Very similar, on both the facts and the issues, to the case before us was Croxton v. Duke Power Co., 181 F.2d 306, (decided by our Court). In the Croxton case, plaintiff came into contact with the wire by virtue of his being on the roof of a barn, constructed on defendant's right of way without defendant's knowledge; in the case now before us, the hoisting of the boom of the crane (hardly foreseeable by defendant Power Company) brought about contact with the overhead wire. What we said in the Croxton case about foreseeability, failure to insulate and to post warning signs should apply equally to the instant case. True, in the Croxton case, the North Carolina law controlled, but we find nothing in the South Carolina cases which militates

against what we there said. See, Woody v. South Carolina Power Co., 202 S.C. 73, 24 S.E.2d 121; Locklear v. Southeastern Stages, 193 S.C. 309, 8 S.E.2d 321; Foster v. City of Union, 129 S.C. 257, 123 S.E. 839; Harrison v. Southern Bell Tel. & Tel. Co., 101 S.C. 517, 86 S.E. 5. Clearly distinguishable from the instant case, on the facts, are Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E.2d 545; Tobias v. Carolina Power & Light Co., 190 S.C. 181, 2 S.E.2d 686; Weeks v. Carolina Power & Light Co., 156 S.C. 158, 153 S.E. 119.

Cases from other jurisdictions seem to sustain the view that we have reached. Merlo v. Public Service Co., 381 Ill. 300, 45 N.E.2d 665; Maggard v. Appalachian Power Co., 111 W.Va. 470, 163 S.E. 27; Troidle v. Adirondack Power & Light Co., 252 N.Y. 483, 169 N.E. 654; Aljoe v. Pennsylvania Power & Light Co., 281 Pa. 368, 126 A. 759; Stackpole v. Pacific Gas & Electric Co., 181 Cal. 700, 186 P. 354; Reiland v. Wisconsin Valley Electric Co., 202 Wis. 449, 233 N.W. 91.

There is force in what was said by the District Judge, in his opinion below: "Criticisms were made of some of the placing and type of poles used in the line and as to whether they were properly supported by guy wires and whether proper inspection had been made of the line. If any defect in the wire such as a lowering or sag or break or other occurrence had been shown, these items of evidence might be pertinent. But there is no possible connection between the things criticized and the cause of this accident. The power line was constructed and maintained in accordance with the requirements of the State. The power Company had no knowledge, information or reason to believe that employees of the brick yard would move a crane under their transmission line and raise this boom without bothering to look to see where they were working or what would be the result. This terrible and tragic accident came about as a result of negligence on the part of the brick yard employees."

For the reasons stated, the judgment of the District Court is affirmed.

Affirmed.