82 So.2d 150 (1955)
CITY OF WILLISTON, Appellant,
v.
Lillie Allie CRIBBS, a widow, Appellee.
Supreme Court of Florida. En Banc.
July 27, 1955.
Rehearing Denied September 15, 1955.
*151 J. Frank West, Williston, and Scruggs & Carmichael, Gainesville, for appellant.
Lazonby, Dell, Graham & Mills, Gainesville, for appellee.
HOBSON, Justice.
The history and the facts of this case are stated in the opinion prepared by Mr. Associate Justice Patterson.
This court long ago adopted the rule that ordinarily the defenses of contributory negligence, Atlantic Coast Line R. Co. v. Gary, Fla., 57 So.2d 10, and assumption of risk, Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462, present issues which should be resolved by the jury. However, our conclusion herein is not reached solely by invocation of the forestated common principle. It is founded upon our inability to find in the record conclusive evidence from which the inescapable inference [i.e., only permissible reasonable inference] must be drawn that appellee's husband assumed such an insouciant attitude toward his own safety as to cause this court to determine as a matter of law that the deceased was shown, under the facts and circumstances of this case, to have been guilty of contributory negligence or that he assumed the risk of the injury which caused his death.
Implicit in the jury's verdict is the inference that the deceased husband of appellee did not appreciate the danger with which he was confronted immediately prior to the accident although he was aware of the condition which created the peril. We do not believe upon a consideration of the evidence in its entirety that such an inference can be declared to be unreasonable. We have held in common with the courts of most, if not all, other jurisdictions that "appreciation of the danger is as essential to the defense of assumption of risk, or of contributory negligence, as is knowledge of the condition which creates the peril." Bartholf v. Baker, Fla., 71 So.2d 480, 483.
This case involves a man who, in the course of his employment as a carpenter, was holding the spool of a measuring tape and walking along the ridge of a pitched roof. The fatal wires obstructed his way. He had admonished his associate to "watch out" for them. He stepped over them with "great caution". The wires were uninsulated but dark in color. These key facts are altogether susceptible of the inference that the decedent was naturally more concerned with maintaining his balance than with making a minute investigation of his surroundings, and failed to appreciate the danger of injury or electrocution. A man walking the ridge of a roof will negotiate any obstruction with caution, solely for fear of tripping or losing his balance, and for the same reason he might well advise a companion to "watch out" for anything which hindered his precarious way along the ridge. Moreover, the decedent, keeping his foothold and his grip on the tape while giving the wires the brief inspection that such a situation would permit, and noticing that they were of dark color, might well have concluded that the wires, if electrical, were insulated and therefore harmless, like, for instance, telephone wires. We do not agree that such a conclusion was not logically and lawfully available to decedent under the facts of this case nor do we believe that the question should have been taken away from the jury. Decedent was not shown to have had any special knowledge of electricity. To reverse this case on the law we must find that decedent, who was concerned with measuring a roof, knew or should have known that the installation from which the wires emanated was composed of transformers which placed a dangerous or lethal electrical charge in the wires, that the wires were wholly without any protective coating, and that the steel tape which he was holding by its spool would conduct the charge through the spool and through his body. If we are required to impute so *152 much knowledge and awareness to the decedent, the dissenting opinion is correct in stating that he "voluntarily or carelessly risked his own injury or death." In other words, under this theory the inference is inescapable that he virtually committed suicide. It is elementary that suicide is never presumed. Be that as it may, so wanton a disregard for personal safety is, to say the least, unusual, and we cannot agree that such an inference is the only reasonable inference deducible from the evidence. We believe there was at least one other reasonable inference which could have been, and obviously was, drawn by the jury from the facts and circumstances established by the evidence. Hence it was, without doubt, the duty of the jury to weigh all such reasonable inferences and determine which inference preponderated. This the jury did, and this court under such circumstance is not authorized to substitute its judgment for that of the jury.
There is no showing of bias or prejudice on the part of the jury, the learned trial judge denied a motion for new trial and his charges were accurate as well as clear. It is not for us to say under such circumstances that the inference patently gleaned by the jury is not reasonable in that it does not accord with, or is antithetical to, logic and reason or human experience, and that another reasonable inference which might have been adopted by the jury should be held as a matter of law to preponderate over any and all other contrary reasonable inferences.
It is our view that this case was properly submitted to the jury upon the questions of contributory negligence and assumption of risk and that the trial judge did not err in denying appellant's motion for judgment non obstante veredicto, or, in the alternative, a new trial.
Affirmed.
DREW, C.J., and TERRELL, ROBERTS and THORNAL, JJ., concur.
SEBRING, J., and PATTERSON, Associate Justice, dissent.
PATTERSON, Associate Justice (dissenting).
Plaintiff recovered a judgment in the Circuit Court of Levy County for the death of her husband, Cribbs, from electrocution by contact with high voltage electric wires owned and maintained by defendant City of Williston. From such judgment defendant has appealed, assigning as error the denial of its motion for summary judgment and its motions for directed verdict at the close of plaintiff's evidence, and at the close of all the evidence, and denial of its motion for judgment notwithstanding the verdict or in the alternative a new trial. The question of defendant's negligence is not in serious controversy, but defendant relies on the defenses of contributory negligence and assumption of risk. Thus the central question in each of defendant's motions, and on this appeal is whether, under the evidence viewed in the light most favorable to plaintiff, plaintiff's deceased husband was contributorily negligent or assumed the risk as a matter of law.
The high voltage line in question consisted of three parallel wires strung from one of defendant's poles erected as an integral part of an installation of a bank of transformers on the grounds of the Dixie Lily Milling Company approximately 200 feet from the point of Cribbs' electrocution, and passed closely above the ridge of the roof of one of the company's buildings at approximately its eastern end. The inside or westernmost wire was elevated three inches above the roof ridge, the center wire was elevated fourteen to sixteen inches above the ridge, and the outer wire passed just beyond the eastern point of the roof ridge. There was a distance of 59 inches between the inside wire and the center wire and 29 inches between the center wire and the outside wire. The wires were uninsulated, of a dark color, and carried at least 2,300 volts of electricity. No protection or warning signs were provided against injury by the line. The wires crossed the ridge at a slight angle so that over the northern slope of the roof they extended over the building, while on the southern side of the ridge they extended away from *153 the building. Because of its pitch, the roof fell away from the wires so that at a point approximately halfway between eaves and ridge a man could pass under them in a standing position.
Shortly before his death, plaintiff's husband, an employee of the milling company, and a fellow employee Hopping, had been engaged in inspecting the roof of the building in question. Having determined that the roof had to be replaced, the two men were proceeding to measure the roof using a 100 foot steel tape. They had already measured the dimension from ridge to eaves and were proceeding to measure the length of the roof along the ridge. For this purpose, Hopping was proceeding westward along the ridge, trailing the tape from the loose running spool while Cribbs proceeded toward the eastern end, also trailing the steel tape from his hand held approximately waist high. In his journey to reach the eastern point of the roof ridge Cribbs was seen to step over the wires with great caution. No eye witness saw his body or the tape come into contact with the wires, but while he was negotiating the wires a flash was seen and heard and Cribbs was seen to fall over the east end of the building. Cribbs was dead when reached. The steel tape was found to have been burned in two about 32 inches from the end Cribbs had been holding. It is not controverted that the cause of death was electrocution by defendant's power line.
There are no substantial conflicts in the evidence, but the appellee insists that there is such a conflict of reasonable inferences that may be drawn from the circumstances of this unfortunate occurrence that the matter of Cribbs' contributory negligence or assumption of risk was properly submitted to the jury and their verdict should be upheld. We know, after the event, that Cribbs' attempt to pass over the wires in the manner attempted was an extremely dangerous undertaking. However, in deciding this case we must appraise his conduct in the light of what he actually knew or is charged with knowing, of the dangers involved when he made the fatal attempt to cross over and between the wires.
We think it is clear that if Cribbs actually knew the wires in question were an uninsulated power line carrying 2,300 volts of electricity, then his act of stepping over and between them, trailing a known electrical conductor, was not only flagrantly careless, but amounted in law to a voluntary assumption of the risk involved and a complete bar to a recovery for his ensuing death. 65 C.J.S., Negligence, § 117; Saxton v. Rose, 201 Miss. 814, 29 So.2d 646. However, as we have said, we must interpret the evidence in the light most favorable to the plaintiff. For that reason we cannot proceed on the inference that Cribbs had an actual knowledge of the lethal charge of electricity in the line, inasmuch as such inference is less favorable to the plaintiff than the other permissible inference that he had no actual knowledge of such danger. There is thus presented the question whether, from the undisputed facts before us, Cribbs, by the exercise of reasonable care for his own safety, should have known that the wires were charged with electricity or should have been put on such notice of the likelihood of their being dangerous that his attempt to cross them without first ascertaining whether it was safe to do so, was such lack of care as to amount in law to contributory negligence barring the action for his death. We know with certainty that he had actual knowledge of the presence of the wires, inasmuch as he was stepping carefully over them at the time of his electrocution, and had in fact told his co-worker to watch out for them shortly before. The question thus narrows itself to whether Cribbs should have known or suspected that the wires were dangerous power lines rather than wires of a harmless nature, such as telephone wires or guy wires.
For the purpose of our inquiry into this latter question, we are guided by additional undisputed facts. Cribbs was a carpenter. He had been employed by the Dixie Lily Milling Company for two years up to the *154 time of his death, working in and about the premises where the building and electrical installation were located. Cribbs' eyesight and the conditions of visibility on the day in question were unimpaired. The installation from which the line emanated was within his easy view.
Faced with these uncontroverted facts, we have searched this record carefully to find any reasonable inference on which to base a conclusion that Cribbs' attempt to cross the wires as he did was consistent with due care for his own safety, and have found none. Every inference points the other way so conclusively that we are of opinion that plaintiff is barred from recovery as a matter of law.
The appearance of the wires themselves was not such as to excuse inquiry of their nature as electric lines. Nothing about their appearance could have affirmatively indicated that they were harmless telephone or guy wires. Thus unless Cribbs already knew what they were, he was put upon the duty to take reasonable precaution to ascertain what they were. If his two years familiarity with the premises had not already apprised him of the fact that they originated at a bank of electrical transformers only 200 feet away, a mere glance would have been sufficient. Under such circumstances, due care does not permit the assumption that the wires were other than what they in fact were, an energized power line. But it may be urged that a jury might infer that their dark color led Cribbs to believe the lines were insulated and safe, though charged. If he in fact proceeded under such mistaken belief it could have been only from his own thoughtless inattention to what was before him to see had he but looked. The jury is not permitted to disregard the unquestionable fact that the merest inspection of a bare metal wire will at least raise the suspicion, if not the certainty, that it is uninsulated, whatever its color might be. And to charge Cribbs with knowledge of the risk involved, it is only necessary that he should reasonably have suspected that the lines were exposed. Under such circumstances, in view of the act he was about to undertake, it was his clear duty, as a matter of law, to make such investigation as would either allay or confirm the suspicion of exposed danger.
Under all the evidence, therefore, we think that Cribbs must, as a matter of law, be charged with knowledge of the risk that the power line causing his death was what it in fact was, an energized and uninsulated power line. Charged with knowledge of that risk, nothing short of staying away from the wires would have met the standard of due care under the circumstances here. And for this purpose, it is immaterial whether the line was carrying a high voltage into the electrical transformers or a lower voltage from them. In either case, careless disregard of the consequences of contact with them is such negligence as will bar recovery for resulting death. Outdoor lines serving electrical energy are known to be dangerous, and any one not specially trained and equipped to work with them, who either knows or is charged with knowing what they are, and who risks almost certain contact with them without taking any precaution to ascertain whether they are energized or the amount of the charge, is guilty as a matter of law of a negligent disregard for his own safety. Stoffel v. New York, N.H. & H.R. Co., 2 Cir., 205 F.2d 411; Arkansas Power & Light Co. v. Hubbard, 181 Ark. 886, 28 S.W.2d 710; West Texas Utilities Co. v. Harris, Tex.Civ.App., 231 S.W.2d 558; Aljoe v. Penn. Cent. Light & Power Co., 281 Pa. 368, 126 A. 759; Hoke v. Edison Light & Power Co., 284 Pa. 112, 130 A. 309; Dresser v. Southern California Edison Co., 28 Cal. App.2d 510, 82 P.2d 965; Bujol v. Gulf States Utilities Co., La. App., 147 So. 545; Beery v. Northern States Power Co., 239 Minn. 48, 57 N.W.2d 838. American Jurisprudence, Vol. 18, Title, Electricity, Sec. 76; 65 C.J.S., Negligence, § 117; 29 C.J.S., Electricity, § 53, p. 608. See also Richmond v. Florida Power & Light Co., Fla., 58 So.2d 687.
In the case of Richmond v. Florida Power & Light Co., supra, appellant, in the act of flying a kite with a copper wire as part *155 of a radio transmitter, was injured by contact of the wire with appellee's electrical transmission lines. It was there held that he should have assumed or at least suspected that wires in his unobstructed view were conducting electricity to the residences of his neighborhood. It appears not to have been material that the appellant knew or should have known the amount of the voltage carried, but it was sufficient that he knew or should have suspected that the lines were electrically energized. It was further said in that case that the inherent danger of electrically energized wires is well known to all except those of tenderest age. Although the case turned on absence of primary negligence of appellee, the expressions quoted indicate the view of this Court consistent with the cited cases on the question of negligent contact with electrical power lines.
We do not think it is necessary in this case to labor over the distinction between contributory negligence and assumption of risk, nor to cite again the many cases on the subject of contributory negligence. It is sufficient merely to say again that "`Contributory negligence' is conduct which involves an undue risk of harm to the person who sustains it. A voluntary exposure of oneself to an unreasonable risk is such contributory negligence where a reasonable man in the same position would not so expose himself." Lindsay v. Thomas, 128 Fla. 293, 174 So. 418, 419.
Appellee cites the cases of Teddleton v. Florida Power & Light Co., 145 Fla. 671, 200 So. 546, and Hardware Mut. Cas. Co. v. Tampa Elec. Co., Fla., 60 So.2d 179. In each of those cases a worker was killed while working in the close vicinity of known electric wires, and in each case the question of decedent's contributory negligence was held to be a jury question. Certainly, we do not mean to say here that working near electric lines is negligence as a matter of law. The undisputed fact present in the instant case which distinguishes it from the cases cited by appellee is that in this case Cribbs deliberately risked almost certain contact with the wires and thereby either voluntarily or carelessly risked his own injury or death. There is no fair or reasonable inference to be drawn from the evidence upon which the jury could find otherwise.
We have the view that the trial Court's denial of defendant's motion for directed verdict at the close of all the evidence constituted reversible error. Being of this conclusion, we do not think it necessary to consider defendant's earlier motions.