## Geroski *v.* Allegheny County Light Co., Appellant.

*Negligence—Electric wires—Insulation—Wires out of reach—Proximate cause.*

An electric company maintaining heavily charged wires twenty-nine feet from the ground and twelve feet from a building cannot reasonably be held to anticipate that the janitor of such building in attempting to hoist a flag on a pole thereon by means of a copper wire, will manipulate the wire from his position on the ground in such manner as to bring it in close proximity to the electric wires, resulting in a shock, causing his death.

Argued Oct. 13, 1914. Appeal, No. 27, Oct. T., 1914, by defendant, from judgment of C. P. Allegheny Co., First Term, 1911, No. 338, on verdict for plaintiff in case of Mary Geroski v. Allegheny County Light Company, a corporation. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for the death of plaintiff's husband. Before DAVIS, J.

The opinion of the Supreme Court states the facts.

Verdict for plaintiff for $4,783.50 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing to direct a verdict for defendant and in refusing to enter judgment for defendant n. o. v.

*John G. Frazer,* with him *Reed, Smith, Shaw & Beal,* for appellant.—The accident did not result from any breach of duty on the part of the defendant: Trout v. Philadelphia Electric Company, 236 Pa. 506; O'Gara v. Philadelphia Electric Company, 244 Pa. 156; Green v. West Penn Railways Company, 246 Pa. 340.

*A. E. Goss,* with him *Robertson & Link,* for appellee.— It cannot be said that the accident was so extraordinary as to absolve the defendant from liability for failing to guard against it: Morgan v. Electric Company, 213 Pa. 151; Penna. Telephone Company v. Varnau, 5 Lanc. Law R. 401; Devlin v. Beacon Light Company, 192 Pa. 188; Dillon v. Light Company, 179 Pa. 482; Griesemer v. Suburban Electric Company, 224 Pa. 328; Fitzgerald v. Edison Electric Illuminating Company, 200 Pa. 540; Mullen v. Wilkes-Barre Gas & Electric Co., 229 Pa. 54; Alexander v. Nanticoke Light Company, 209 Pa. 571; Illingsworth v. Boston Electric Light Company, 161 Mass. 583 (37 N. E. Repr. 778); Cramer v. Aluminum Company, 239 Pa. 120.

Opinion by Mr. Justice Potter, January 2, 1915:

Mary Geroski brought this action of trespass against the Allegheny County Light Company, to recover damages for the death of her husband, John Geroski, which she alleges was due to the negligence of defendant. Geroski was a coal miner and lived at Glendale, Allegheny County. He was also the janitor of the Polish Falcon Hall at that place. The hall fronts on a public

street, and upon the roof of the front portion of the hall, there is a flagpole. The wires of the defendant company are strung upon poles along the side of the street in front of the hall, at a distance of twelve or thirteen feet from the building, and at a height of about twenty-nine feet from the ground. The flagpole extends some eight or ten feet higher than the wires. There is a narrow boardwalk in front of the hall, and defendant's poles are placed between it and the roadway. On May 28, 1910, Geroski was about to raise the flag on the pole. A rope had previously been used for that purpose, but at that time Geroski attempted to remove the rope and replaced it with a piece of copper plated wire. He attached an end of the wire to the rope, and began to pull it up. When the wire reached the top of the pole, it became entangled in some way, and in trying to loosen it, Geroski stepped backwards from the porch of the hall, where he had been standing, to the boardwalk, and then into the roadway, pulling and shaking the wire and rope. While so engaged, the small wire evidently came in contact with or in close proximity to, the overhead electric wire, and Geroski received an electric shock which caused his death. It was alleged on the part of plaintiff that defendant's overhead wire which was charged with a powerful current of electricity, was not properly insulated, and was not in good repair. The trial in the court below resulted in a verdict for plaintiff, and from the judgment entered thereon defendant has appealed.

The first assignment of error is to the refusal of the trial judge to give binding instructions in favor of the defendant, and the second assignment is to his refusal to enter judgment for defendant non obstante veredicto. It was admitted that the electric wires were part of a so-called high tension power line, carrying 10,000 volts. The evidence offered upon the part of plaintiff tended to show that the insulation on the electric wires was worn off to a slight extent in a few places, but there was nothing to indicate that the wires were in any way out of re-

pair.    The testimony of the witnesses who had any knowledge of electricity, tended to show that Geroski did not receive anything like the full force of the current, or such as he would have received had the wire in his hand come in direct contact with an uninsulated part of the overhead electric wire.    The testimony of these witnesses, who had expert knowledge of the subject, and of the conditions which existed at the time, tended to show that the shock which Geroski received, came from the fact that the wire in his hand was brought by him into close proximity to the overhead highly charged electric wire, but not into actual contact with it.    In the judgment of these witnesses, the injury was caused by the leakage of static electricity from the overhead wire, which when the small wire was brought near to it, entered it by induction.    It was further pointed out, that in case of direct contact between the wires, the burns received by Geroski would have been much more severe, and death would have been instantaneous.    It matters not, however, whether the injury resulted from direct contact with the overhead wire, or from leakage therefrom which entered the small wire held by Geroski, when it was brought by him into close proximity to the overhead wire.    For in any event, it is apparent from the testimony in this case, that with such high tension wires as these, carrying so heavy a voltage, mere insulation alone, could not be depended upon to insure safety to the public.    In any such case, due precaution would require that the wires should be so placed, that there would be no likelihood or reasonable probability of human contact therewith.    If therefore, under the circumstances the defendant company ought to have reasonably anticipated, that anyone in the proper exercise of business or pleasure would come in contact with its overhead wires at the location in which they were placed, it would properly be liable in damages, for such injuries as were the proximate result of such location, unless the injured person was guilty of negligence contributing to the in-

jury. Can it be said in the present case that appellant ought to have reasonably anticipated that any person upon the ground would come in contact with its electric wires carried at a height of twenty-nine feet in the air, and twelve feet distant from the building? Was it bound to foresee that appellee's husband would attach a wire to the flagpole twelve feet away, and then walk out into the street under the wires, and pull upon the small wire in his hand, until he had drawn it over the intervening distance, and brought it in contact with, or in close proximity to, the overhead electric wire? If not, then it follows under what may properly be regarded as the well settled doctrine of our cases, that there can be no recovery by plaintiff, and that judgment should have been entered for the defendant. Thus in Trout v. Electric Co., 236 Pa. 506, it appeared that a thirteen year old boy was endeavoring to detach a kite' from an electric wire on which it had been caught when he received a shock which resulted in his death. The wire was stretched upon poles, at a distance of about four feet six inches from the outside edge of the cornice of the house. The boy lay down on the cornice and threw a corncob tied to the end of a string, over the electric wire and pulled it toward him; when the wire came within reach he touched it, and immediately received the electric shock. This court speaking through Mr. Justice MOSCH-ZISKER said (p. 509) : "The act of the boy in getting hold of the wire was wholly unrelated to any act of the defendant in connection therewith. Had the wire been so close to the house that the boy might naturally have come in contact with it while playing about the roof, it might be contended that its condition was the proximate cause of his death. But such was not the case; all of the defendant's wires were so far out from the house that they could not possibly have been reached by a full grown man much less a boy of thirteen. The boy could have run and played all over the roof without the possibility of his coming in contact with these wires. It

was an original independent act of the deceased which could not reasonably have been anticipated that brought about this most sad accident, and this act was not induced by or did not follow as a natural sequence to any negligence of the defendant in connection with its wires. Under such circumstances there could be no recovery, and the defendant was entitled to binding instructions as requested." In O'Gara v. Electric Co., 244 Pa. 156, the action was against an electric company to recover damages for personal injuries, resulting from a seven year old boy having come in contact with an uninsulated wire of defendant; it appears that the wire was some eight or ten feet above the sidewalk, and was connected with an electric light suspended from the bar of an awning; that the boy had climbed up a pole supporting the awning, and while walking along a horizontal bar had come in contact with the wire. There was evidence that the boys of the neighborhood including plaintiff had been forbidden to climb the pole, and there was no evidence that defendant had actual knowledge that they did so. It was held that under these circumstances there could be no recovery. Mr. Justice BROWN said (p. 158): "If the defendant company ought reasonably to have anticipated contact with the wires where the boy grasped them, its use of them uninsulated at that point was the proximate cause of the injury; and if the place where he came in contact with them was to be legitimately regarded as a playground for children, either on account of the character of the place or by reason of its permissive use by children, the defendant was bound to anticipate that injuries might result from its use of uninsulated wires. All this is frankly conceded by learned counsel for the appellee, whose further concession is that the boy was not a trespasser upon private property, nor guilty of contributory negligence, in view of his age. The defense is that, under the circumstances, no duty was upon the company to insulate the wires." The opinion concluded (p. 160): "But it is urged that, as boys

had frequently got on the awning rods in their sports, the defendant company had at least constructive notice of this and was, therefore, bound to insulate its wires. It does not appear that the company ever had any actual notice of the boys' performances, and, in the absence of such notice, it could safely assume that they would not do what the injured plaintiff and his companion did. Under the circumstances, nothing short of actual notice of their performances imposed any duty upon the company to protect them from injury from its wires suspended from the awning beyond their reach and that of all others in the ordinary use of the sidewalk and adjoining premises." Again, in the case of Green v. West Penn Railways Co., 246 Pa. 340, it appeared that two boys while playing found a coil of copper wire. They attached a stone to one end of the wire, and threw it over a high tension uninsulated feed wire of the defendant company. A third boy took hold of the wire and was badly injured. Upon the trial, judgment of nonsuit was entered, which was affirmed by this court. In the opinion by Mr. Justice STEWART, he said (p. 343): "It is settled law that no liability results from failure to anticipate wrongful acts by others; but waiving this, for the reason that in this case we are dealing with a trespass committed by boys of tender years, such fact under certain conditions changing the rule, and regarding the copper wire incident simply as an interference not participated in by the defendant company, and done without its knowledge, how stands the case? Without the wire present, the accident could not have occurred. By merest chance the boys found it at the foot of a telephone pole, and in sport they threw it over the feed wire. Could such a concurrence of fortuitous circumstances have been reasonably foreseen by the defendant company? Considering that defendant company stood in no relation to the wire, was not responsible for it being where it was, and had no knowledge of it being there, to hold it responsible for the injury to the boy, on the

ground that it should have anticipated such consequence, from the fact that it maintained an uninsulated feed wire at an elevation which would admit of a stone attached to a wire being thrown over it, would be to substitute for injury within reasonable anticipation, any possible injury which might result. There is no case going to such extreme length." The only one of our cases which might seem to justify any modification of the conclusions in these decisions which we have cited, is Mullen v. Electric Co., 229 Pa. 54. In that case it was shown that a child of tender years climbed into a tree on the sidewalk, and was injured by contact with a poorly insulated wire running through the branches. It appeared that children were accustomed to play about the tree and climbed into it. In affirming a judgment in that case, Per Curiam, we said (p. 61) : that "On the main question presented by this appeal, whether danger to any one was reasonably to be apprehended because of the conditions of the defendant's wire the case is admittedly close, but in the opinion of a majority of the court the judgment should be affirmed." That case, however, went to the extreme limit, for in the subsequent case of Trout v. Electric Co., 236 Pa. 506, it was said (p. 510), that Mullen v. Electric Co., "stands for and must be confined to its own facts." This was repeated in O'Gara v. Electric Co., 244 Pa. 156. The true line of distinction in these cases, is that which was pointed out in Yeager v. Electric Co., 242 Pa. 101. We there said, (p. 104) : "Prudence requires those in control of a deadly current of electricity to exercise the highest degree of care in protecting the wires at points where persons in the course of their lawful employment are liable to come in contact with them." And attention was called to the distinction between the danger to be apprehended from the wires when hanging in the air out of ordinary reach, and that which should properly be anticipated at a point where persons in the exercise of their proper employ-

ment might come into dangerous proximity to the heavily charged wires.

In the present case the wires were hanging entirely out of ordinary reach, being twenty-nine feet from the ground, and more than twelve feet away from the building. The defendant could not have reasonably anticipated the combination of circumstances which resulted in the injury to Geroski. He was an adult, in the full use of his faculties. He found a rope, which was a nonconductor of electricity, attached to the flagpole. He attempted to substitute for the rope, a copper plated wire, which was an excellent conductor of electricity. He then manipulated the wire, and finally walked with it in his hand, out under the heavily charged electric wire, into the street far enough to pull the copper wire over the intervening distance of twelve feet, until it came in contact with, or in close proximity to the electric wire, twenty-nine feet in the air. Surely the defendant could not reasonably have anticipated such a concurrence of fortuitous circumstances. Doubtless the action of Geroski was due to ignorance but the result was no less fatal. It drew down upon him the deadly current, which in the absence of his unusual but active interference therewith, would have done him no harm.

The first and second assignments of error are sustained. The judgment is reversed, and it is now entered for the defendant.