CAROLINA PINA, administratrix, *vs.* CAPE & VINEYARD ELECTRIC COMPANY.

Barnstable.   October 2, 1934. — January 4, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & DONAHUE, JJ.

*Negligence,* Contributory, In use of electricity.

Undisputed testimony of witnesses for both the plaintiff and the defendant at the trial of an action of tort by an administrator against an electric company for causing the death of the plaintiff's intestate, which occurred when he voluntarily took hold of a live electric wire of the defendant which was broken and hanging from a pole, that, before he did so, he saw the wire swaying back and forth, burning, sparking and sizzling when it struck the ground and causing grass to catch fire, required a ruling that such conduct of the intestate was negligent and was a proximate cause of his death, and required that, on exceptions by the defendant after a verdict for the plaintiff, this court order judgment entered for the defendant.

TORT.   Writ dated June 10, 1932.

In the Superior Court, the action was tried before *Hanify,* J.   Material evidence is described in the opinion.   Of the four boys and a girl who, as therein stated, were eyewitnesses to the accident, the girl only testified for the plaintiff.   The boys all were called by and testified for the defendant.

A motion by the defendant that a verdict be ordered in its favor was denied.   There was a verdict for the plaintiff in the sum of $2,000.   The defendant alleged exceptions.

The case was submitted on briefs.

*T. F. O'Brien & S. E. Bentley,* for the defendant.

*J. Schneider & J. E. Reilly,* for the plaintiff.

PIERCE, J.   This is an action of tort to recover damages for the death of Arsenia Pina, who was electrocuted by a wire of the defendant which was broken and hanging from a pole of the defendant on March 7, 1932, in the town of

Harwich. The defendant's answer was a general denial and contributory negligence. At the close of the evidence and before arguments the defendant duly filed a motion for a directed verdict, which the judge denied, and the defendant duly saved its exception. The bill of exceptions contains all the evidence material to the issues to be decided by this court. The jury found for the plaintiff.

The evidence in its aspect most favorable to the plaintiff warranted the jury in finding, in substance, as follows: On March 7, 1932, and for at least two years prior thereto, the defendant had operated five electric light wires attached to a pole in front of the Arsenia Pina store on Kelly Road, a public highway in the town of Harwich. Three of these wires carried twenty-three hundred volts all the time, and the other two carried the same voltage when the street lights were on. This voltage was dangerous to human life if any human being came in contact with the wires, and might have fatal results. If the wires are properly set up and constructed in relation to each other they will not come in contact with each other but will all generally sway even. Wires that come in contact will get burned out. They are placed so there will be a sway of around ten to twelve inches. The wire that was broken must have swayed to the full extent to get burned out as it did, although a defective wire, particularly thin at some place, would burn out at that point. The defendant made no routine inspection of its electric light wires other than in connection with service and repair work, except on call or complaint. The defendant had no records of whether any inspection had been made on the wires on Kelly Road in Harwich for two years prior to March 7, 1932, and had no records showing what repairs were made on the wires in the Harwich district for two years prior to March 7, 1932. The general manager of the defendant testified "that to his knowledge there were no repairs made on the wire with which Pina came in contact for any period say two years before the accident." Regardless of the issue whether the defendant knew of the break in the wire in season to have shut off the power before the accident to Pina, it is plain that the jury could have found

that the defendant should have inspected the wires in their relation to each other at proper intervals to ascertain if there was any maladjustment which would permit over swaying or if there was any defective condition of the wires.

The evidence of the circumstances that attended the accident to Pina warranted the jury in finding that it had rained and the wind had blown "a gale" early in the morning of March 7, 1932; that at 7:15 A.M. of that day a live wire of the defendant's electric light system, which was ordinarily suspended between supporting poles, was seen to be broken and to be hanging from the pole in such manner as to be four feet from the pole at the bottom and about three feet from a highway fence, and on the inside of the fence, where it was burning, sparking and sizzling; that the fence was directly back of the pole and a wire loop was swinging back and forth, and every time it hit the ground it would spark and sizzle; that it was a stormy morning and the grass was catching fire.

Four boys and a girl were the only persons at the place of the accident until after it occurred. The girl, Deltina Galvin, called by the plaintiff, testified that "she saw the accident before Mr. Pina was on the ground; that she was just going into the store when the boys came after Mr. Pina and told him that the grass was catching on fire near the dance hall; that she saw Mr. Pina go out after the boys and she went after him; that they went toward the pole where the wire was and when Pina kept on going she stopped near the hall; she saw Pina reach his hand over the fence and get hold of the wire; she had heard one of the boys tell Pina not to touch the wire; as soon as he touched the wire he fell down near the roadside; she then yelled and ran to call his sister Catherine; that the wire was about three feet away from the fence; the first time she saw the broom was when Eugene [Teixeira] had it in his hand and she did not see who took it there." On cross-examination she testified that "she heard the boy who spoke to Pina say, 'You shouldn't touch it,' he shouted not to touch it." Eugene Teixeira, called by the plaintiff, testified, in substance, that in response to a cry for help he went right

to the body; that it was lying on the road, the feet being about one foot from the pole; that he saw a broom lying about six inches from him (Pina); that the wire was lying right on his chest; that he took the broom and gave the wire one stroke and the wire landed over the fence; that he felt a little shock; that he noticed burns on the dead man's chest where the end of the wire was laid and on his clothes. On cross-examination he testified that Pina did not have the wire or anything in his hand; that when he arrived he saw the end of the wire sparking on Pina's chest and saw the wire in the field sparking and the place where the wire was laid was burned. The testimony of the witnesses for the plaintiff was corroborated by the witnesses for the defendant in all its material aspects.

Assuming that the evidence warranted a jury in finding that the defendant failed to inspect the electrical relation of the wires to each other or to observe whether there was defective insulation at the point of breaking, and that this delay or neglect had a causal connection, not too remote, with the burning off or breaking of the wire and with the suspension of the live wire, the plaintiff had no cause of action, for the reason that when Pina touched the wire he had the evidence of his own eyes that there was danger in touching a wire which was burning, sparking and sizzling, though he might not have fully appreciated the degree of such danger. It is plain as a matter of law that Pina's conduct was negligent and a contributing cause to his death. *Chartier* v. *Barre Wool Combing Co. Ltd.* 229 Mass. 153. It follows that the exceptions are sustained, and, in accordance with G. L. (Ter. Ed.) c. 231, § 122, judgment is to be entered for the defendant.

*So ordered.*