**WEST TEXAS UTILITIES CO. v. HARRIS et ux.**

No. 2802.

Court of Civil Appeals of Texas. Eastland.

June 9, 1950.

Rehearing Denied June 30, 1950.

---

Wagstaff, Harwell, Wagstaff & Alvis, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellees.

GRISSOM, Chief Justice.

H. N. Harris and wife sued the West Texas Utilities Company for damages caused by the electrocution of their minor son, Bobbie Harris. Plaintiffs alleged that Bobbie was employed by the Pioneer Gasoline Company to clean out its gasoline pipe line; that Bobbie and others would unscrew joints of pipe along the line, stand one end of a pipe on a block of wood and hit the pipe with a hammer to break loose the rust in the pipe; that, while Bobbie was so engaged, a pipe he was cleaning came in contact with defendant's high voltage electric line "above his head" and Bobbie was electrocuted. The sole ground of negligence either alleged or found by the jury was that defendant's electric line was maintained, at the point where Bobbie was electrocuted, less than 22 feet above the ground, contrary to the requirement of Art. 1436. The jury also found that the failure of the Utility Company to maintain its line at least 22 feet above the ground was a proximate cause of the death of Bobbie Harris. The jury found that neither Bobbie nor his father was guilty of negligence. Judgment was rendered for plaintiffs and the defendant has appealed.

The evidence shows that Bobbie Harris, aged 18, another boy, L. D. Collins, and several men were working northward along the west side of a graveled road from Sabanno to Pioneer, cleaning a gasoline pipe line as employees of Pioneer Gasoline Company; that they would unscrew a joint of pipe in the pipe line and "up-end" the pipe on a wooden board, known as a "lazy board," hit the pipe with a hammer and knock out the rust; that Bobbie worked on this line one Thursday afternoon and returned to the same work the following Monday morning; that the superintendent of Pioneer Gasoline Company, Mr. Mills, helped Bobbie, L. D. Collins and Mr. Gray unscrew the first joint of pipe, warned them to be careful about the electric wires, and left; that almost immediately after the superintendent's departure, Bobbie and L. D. raised the first joint of pipe unscrewed that morning and placed one end on the lazy board. Mr. Gray said that he then walked back to the "union" to get his hammer and just as he raised his hammer to strike the pipe "they come in contact with the wire" and Bobbie and L. D. Collins were electrocuted.

Appellant's electric line carried 7,200 volts. It is undisputed that Bobbie Harris was killed when the pipe raised by him and L. D. Collins came in contact with appellant's electric line. Appellant's electric lines ran along the west side of the road, with its poles in the western edge of, or adjoining, the borrow pit; immediately west of the electric lines was the gasoline pipe line of Pioneer Gasoline Company, which pipe line, at the point where Bobbie Harris was killed, lay on top of the ground. The position of said pipe line is described by various witnesses as being approximately under appellant's electric lines to three feet west of said electric lines. West of the pipe line was a barbed wire fence. Location of the fence is described as being from "slightly west" to "four feet west" of the pipe line. Appellant's electric line was not insulated. Whether the pipe line was, as described by different witnesses, approximately, directly under appellant's lines or three feet west of appellant's electric lines, the raising of joints of two-inch pipe, resting on a lazy board, described by different witnesses as being from one to four inches thick, and beating said pipe with a hammer

close to the electric wires was dangerous. This danger was recognized by the workmen on said pipe line and their superintendent. Bobbie Harris had been repeatedly warned of the danger of having a pipe come in contact with appellant's exposed electric wires. He knew it was dangerous. Mr. H. N. Harris, Bobbie's father, testified that he saw Bobbie and L. D. Collins and Mr. Gray working on the two-inch pipe line a few days before Bobbie's death; that he saw them take some joints of pipe loose and place one end on a lazy board under the high line; that the "lazy board" was about two inches thick; that "they would end that joint of pipe up on that board and one or two of them would hold it and somebody would hammer it with a hammer." That he saw where those joints of pipe were coming "in relation to that highline"; that he warned Bobbie "to be careful not to get that pipe line into those wires;" that he could see that it was dangerous; that he did not know Bobbie was going back to do this kind of work; that he thought he was through; that if he had not thought he was through he would have asked Bobbie not to work there any more. Mr. Harris testified that the electric wires were quite large; that "you can see them quite a long ways." Mr. Mills, superintendent of Pioneer Gasoline company, a witness for defendant, testified that he remembered the occasion "when Bobbie and L. D. Collins got killed by letting a pipe come in contact with an electric wire;" that he was with Bobbie and others working on the pipe line for a while on Thursday afternoon before Bobbie was killed the following Monday morning; that he observed the relationship of the pipe line to the electric wires and "told them to be careful about the electric wires." He testified:

"Q. Did you tell Bobbie Harris anything about those electric wires? A. I didn't pick out anyone in person. I just told the gang. We had about—I believe we had five men that day in the gang.

"Q. Were they all together when you told them? A. Yes, sir.

"Q. Could they all hear you? A. Well, I would think so.

"Q. And what did you tell them about the electric wires? A. I just told them to be careful about them.

"Q. They were to up-end those joints weren't they and hammer on them? A. Yes, sir.

"Q. And that pipe line went approximately under the electric wires and with the wires? A. Well, it was parallel with the wires. It was just a little piece from the wires; kind of half—I would say about half way between the electric line and the fence that was there.

\*     \*     \*     \*     \*     \*

"Q. But you told them—warned them not to get in contact with those wires? A. I just told them to be careful about the wires."

Mr. Mills testified that on Monday morning he helped Bobbie and L. D. and Mr. Gray "break out" the south end of the particular joint of pipe which Bobbie and L. D., a few minutes later, brought in contact with the electric wire. He further testified:

"Q. Did you say anything to those boys then about those wires? A. Yes, sir. I told them to be careful about the wires."

Mr. Mills then left to see about some gasoline drips. He testified that it could not have been over ten minutes later when Bobbie and the other boy brought a joint of pipe in contact with an electric wire.

Mr. Dupriest, an employee of Pioneer Gasoline Company, and others, testified that the crew with which Bobbie was working was repeatedly warned of the danger of letting a pipe come in contact with appellant's electric line.

Mr. Gray, who was assisting in cleaning the pipe line, worked with Bobbie Harris and L. D. Collins on Thursday before their death on the following Monday. He described how they would unscrew, or, according to his language, "break out" a joint of pipe, place one end on a "lazy board" and hammer the pipe to remove the residue from the pipe. He testified that the "lazy board" was approximately two inches thick; that while the joints of pipe were standing they were "pretty close to" the electric wires; that he talked to those working on

the pipe line about the electric wires; that he spoke to all of them that were working there together. He further testified: "I told them, 'We got to look out for that line. It's dangerous.'"

"Q. Did Bobbie Harris make any remark? A. Yes, He said 'We will have to remember that. It is dangerous.'"

* * * * * *

"Q. How many times do you suppose you warned those boys on that Thursday? A. Oh, I would not know. Several times. Two, three or four times—dozen times, maybe, during the time we were taking up the pipe.

"Q. Then would you and Bobbie and L. D. Collins, would all of you assist in ending those joints up? A. Yes, sir.

"Q. And would all of you watch to see where those wires were? A. Well, yes. I think so.

"Q. Well, do you know whether you did or not Mr. Gray? A. I know that I did.

"Q. All right; now, after that Thursday when did you next work on the line? A. I think it was Monday morning, the fourteenth.

"Q. The fourteenth; that's the morning that these boys got killed? A. Yes, sir."

The superintendent of Pioneer Gasoline Company, on Monday morning, again warned Bobbie Harris and L. D. Collins and Mr. Gray "to be careful about the wires" and, within ten minutes after this warning, the boys brought a joint of pipe in contact with appellant's electric wires and were killed.

Mr. Gray, who was left with Bobbie and L. D. after the superintendent gave them the last warning and departed, testified that he walked to the "union" to get his hammer. He testified:

"A. Just as I raised up with the hammer why they come in contact with the wire; about the same time.

"Q. With the wire. I see; and they were both killed? A. Yes, sir."

* * * * * *

"Q. Do you know whether the pipe was standing on that block? A. Yes, sir. It was.

"Q. At the time they contacted the wire? A. Yes, sir.

"Q. Do you know how they got it in the wire except they did? A. Well, it seemed as though, before I could get to the pipe, the pipe was standing on the board, I could see fire coming out the bottom and I looked up.

"Q. But you don't know how that happened to it? A. Well, it just pulled up there against it, I suppose."

Bobbie was 18, a high school graduate, intelligent and had good sight and hearing. The wires were large and easily seen. There was testimony they could be seen for one-fourth of a mile. The accident happened in daylight.

Appellant contends, among other things, that the judgment should be reversed and judgment rendered for appellant because (a) the evidence shows conclusively, that is, as a matter of law, that appellant's negligence in maintaining its line, at the point where Bobbie Harris was killed, less than 22 feet above the ground was not a proximate cause of Bobbie's death, and (b) that the evidence shows as a matter of law that Bobbie Harris was guilty of contributory negligence which was a proximate cause of his death.

Despite some argument in appellee's brief to the effect that electricity may have jumped or "arced" from the wire to the pipe held by Bobbie and his companion, if material, there is no evidence of such jump. It is undisputed that Bobbie and L. D. brought the pipe in contact with the electric wire, this was alleged by appellee and admitted by appellant. It is undisputed that the pipe that came in contact with the electric wire rested upon a wooden board known as a lazy board. The evidence as to the thickness of this board varies from one to four inches. For present purposes, we shall treat it as being the minimum shown by the evidence, that is, one inch thick. It is undisputed that the joint of two-inch pipe which Bobbie and L. D. Collins brought in contact with the electric wire was 22 feet and 7 inches long; that it was slightly bent; that, without measuring around the bend, but measuring directly from one end of the pipe

to the other, the pipe was 22 feet and 6 inches long; that the pipe was raised from, approximately, under the electric line; that the pipe contacted the wire 21 feet and 8 or 9 inches from the bottom of the pipe; that the burned place on the pipe where the pipe and the electric wire made contact was at least 9 inches below the top of the pipe. We think it is thus conclusively shown that contact of the pipe with the electric line was not caused by the fact that the electric line was 21 feet and 8 inches, according to the testimony of appellees' witnesses, instead of 22 feet, above the ground. In other words, if the point of contact was 8 or 9 inches below the end of the pipe the pipe would have contacted the electric wire had it been 22 feet above the ground, that is, 4 inches higher, and the fact that the wire was 4 inches lower than the minimum height fixed by law could not have been a cause of the contact between pipe and wire and the resulting electrocution.

■ After most diligent study of the statement of facts, we are compelled to conclude that the evidence shows conclusively that the pipe would have contacted the wire if the wire had been at the statutory height, that is, 22 feet above the ground. We, therefore, conclude, as a matter of law, that appellant's negligence in maintaining its wire lower than the statutory requirement was not a proximate cause of Bobbie Harris' death.

Appellants' negligence in maintaining its line less than 22 feet above the ground was not a legal cause of Bobbie's injury unless it was a substantial factor in bringing about his injury. Restatement of the Law—Torts —Negligence, 1159, Sec. 431. Appellant's negligence was not a substantial factor in bringing about Bobbie Harris' harm because it would have been sustained even if appellant's line had been 22 feet above the ground. Ibid. 1161, Sec. 432.

"In such case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a preceptible factor in bringing it about and cannot be a substantial factor in producing it.

"Illustrations:

"1. A statute requires all vessels plying on the Great Lakes to provide lifeboats. One of the A Steamship Company's boats is sent out of port without any such lifeboat. B, a sailor, falls overboard in a storm so heavy that had there been a lifeboat it could not have lived in the sea then running. B is drowned. The A Company's failure to provide lifeboats is not a cause of B's death.

"2. A dams a stream running through his own land. The dam is negligently constructed in that it is not sufficiently strong to confine the water from the freshets which occur from time to time in the spring. A sudden cloudburst of unprecedented severity sweeps the dam away, causing the water collected thereby to overflow the land of B. The flood caused by the cloudburst is so great that it would have burst the dam even had it been properly constructed. A's negligent construction of the dam is not a cause of the inundation of B's land." Ibid. 1162, 1163.

See also East Texas Motor Freight Lines v. Loftis, Tex.Sup., 223 S.W.2d 613, 617; Burton v. Billingsly, Tex.Civ.App., 129 S. W.2d 439, 442 (Writ Ref.); Jennison v. Darnielle, Tex.Civ.App., 146 S.W.2d 788, 792 (Writ Dis.); Texas & P. Ry. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284; Id., 280 U.S. 531, 50 S.Ct. 159, 74 L.Ed. 596; Galveston, H. & S. A. Ry. Co. v. Averill, Tex.Civ.App., 136 S.W. 98, 100; Cameron Compress v. Jacobs, Tex.Civ.App., 10 S.W. 2d 1040, 1042 (Writ Ref.); American General Ins. Co. v. Southwestern Gas & Electric Co., 5 Cir., 115 F.2d 706, 708.

In Dowlen v. Texas Power & Light Co., Tex.Civ.App., 174 S.W. 674, 676 (Writ Ref.), under a comparable fact situation, the court said: "It is unnecessary to submit the issue of proximate cause in controversies of this character, except where there may be a difference of opinion as to whether the conduct referred to in fact constituted a proximate cause of the injury. If V. A. Dowlen in this instance was guilty of contributory negligence in touching the wire, then the jury could reach no other conclusion than that this conduct was a

proximate cause of his injury, and the court might assume this to be true, as a matter of law. St. Louis Southwestern Ry. Co. of Texas v. Missildine, Tex.Civ.App., 157 S.W. 245."

In Morris v. Kansas City Light & Power Co., 302 Mo. 475, 258 S.W. 431, 432, the Supreme Court of Missouri held that a plaintiff, who knew that a broken end of a charged electric wire was hanging in a tree and, unnecessarily, approached within two feet of the wire and was injured by contacting the wire when it fell from the tree, could not recover, although defendant's negligence caused the dangerous condition, because plaintiff's negligence, not defendant's was the proximate cause of plaintiff's injury.

In Parks v. San Antonio Traction Co., 100 Tex. 222, 94 S.W. 331, 98 S.W. 1100, there was evidence that plaintiff's injuries were sustained by jumping from a moving car. The Supreme Court of Texas held that if plaintiff's injuries were so negligently sustained that, as a matter of law, plaintiff's negligence was the proximate cause of his injuries. The following decisions are to the same effect: Panhandle & S. F. Ry. Co. v. Sledge, Tex.Civ.App., 31 S.W.2d 146, 149, affirmed Tex.Com.App., 45 S.W.2d 1112; Fink v. Brown, Tex.Civ.App., 183 S. W. 46, 50, reversed on other grounds, Tex. Com.App., 215 S.W. 846 and Geroski v. Allegheny County Light Co., 247 Pa. 304, 93 A. 338, L.R.A.1915D, 560, 562.

Under the undisputed evidence, Bobbie Harris knew and appreciated the danger of causing a joint of pipe to come in contact with an electric wire. He said so. He had been repeatedly warned of the danger. Within ten minutes after he was last warned of the danger he and the other boy brought a joint of pipe in contact with an electric wire. The only way the pipe could have been brought in contact with the electric wire was by raising, or leaning, the pipe to the east. It could have been raised, or leaned, to the north, south or west in safety. The lazy board on which the pipe rested could have been easily moved to the west further away from the electric line. See Restatement of the Law—Torts—Negligence, 1244, Sec. 473.

In United Gas Corporation v. Crawford, 141 Tex. 332, 172 S.W.2d 297, 298, Crawford obtained a judgment for injuries sustained when he fell into a hole excavated by the corporation. The jury found that the corporation was negligent in failing to brace the walls of the hole and to place boards around its edge to prevent caving and that such negligence was a proximate cause of Crawford's injuries. The jury found that Crawford was not guilty of contributory negligence. Crawford was employed by the City to work on its streets. He had worked on the street near the hole before the day he was injured. He saw the hole before he was injured, knew it was there and knew there was a pipe line across the hole about 20 inches from the bottom. The hole was in plain view to anyone willing to use his eyes. In the daytime, while the street was wet, he stood near the edge of the hole shoveling dirt off the street, the edge of the hole caved in and caused him to lose his balance and fall into the hole. The controlling question presented to the Supreme Court was whether Crawford was guilty of contributory negligence as a matter of law. Under such circumstances, the court said: "It is quite clear that respondent was guilty of contributory negligence as a matter of law, and is not entitled to recover."

The judgments of the trial court and Court of Civil Appeals were reversed and judgment rendered for the appellant.

In International & G. N. R. Co. v. Edwards, 100 Tex. 22, 93 S.W. 106, our Supreme Court held that Edwards could not recover for injuries sustained in a crossing accident where the approaching train was plainly visible and audible and he walked on the track without paying any attention to it, merely because the statutory signals were not given by the operators of the train.

In Jones v. Beck, Tex.Civ.App., 109 S.W.2d 787, 788 (Writ Ref.), a carpenter employed to erect concrete forms in holes dug by an excavating contractor, fell into a hole because of the contractor's negli-

gence in leaving loose dirt near the edge of the hole. The court said that if leaving loose dirt near the edge of the excavation was negligence " * * * likewise, for workmen, with knowledge of all the facts, to attempt to work near the edge of such hole where the loose dirt was left would be contributory negligence." The court called attention to the fact that there were no hidden defects. See also Gulf, C. & S. F. Ry. Co. v. Gaddis, Tex.Com.App., 208 S.W. 895, 896.

In Dresser v. Southern California Edison Co., 28 Cal.App.2d 510, 82 P.2d 965, 969, the court held that one who knew of the proximity of a high powered transmission line to an electric pump, but who, without regard to the wires, raised a rod until it contacted the exposed wires overhead, could not recover from the power company, regardless of whether the power company's electric wires should have been at a greater height above the ground, because of plaintiff's contributory negligence.

In Bujol v. Gulf States Utilities Co., La. App., 147 So. 545, 548, the Court of Appeals of Louisiana held that a highway contractor's employee electrocuted as a result of raising a steel pipe on top of a rice field levee beneath a power company's high voltage wire, though warned of the danger, was guilty of contributory negligence as a matter of law and could not recover.

In Arkansas Power & Light Co. v. Hubbard, 181 Ark. 886, 28 S.W.2d 710, plaintiff was helping another raise a pole near gasoline tanks which were beneath the appellant's electric lines when he suffered an electric shock. The electric line was 4 or 5 feet above the gasoline pumps and about fifteen feet above the ground and the fact that the electric wire was uninsulated was easily discoverable. It was held that the plaintiff was guilty of contributory negligence as a matter of law.

In Potomac Edison Co. v. State, 168 Md. 156, 177 A. 163, 166, the Court of Appeals of Maryland said: " * * * where such a person voluntarily comes in contact with, or approaches near than a reasonably prudent person would do, a wire or other thing which he knows, or as a person of ordinary knowledge and experience has reason to believe is sufficiently charged with electricity, to be dangerous, and in consequence of such contact or proximity is shocked and injured, it will be assumed as a matter of law that his own negligence contributed to the accident."

"When the negligent act of the plaintiff is necessary to make a dangerous situation negligently created by the defendant effective in harm, the plaintiff's negligence is always a contributory factor in producing his harm and as such prevents him from recovery against the negligent defendant." Restatement of the Law—Torts—Negligence, pp. 1251, 1252, Sec. 478.

■ While the undisputed evidence shows, as it does here, the existence of danger and that the injured person knew of the danger and exercised no care for his own safety, contributory negligence of the injured party is shown, as a matter of law. Wichita Valley Ry. Co. v. Fite, Tex.Civ.App., 78 S.W.2d 714, 716; Burton v. Billingsly, Tex.Civ.App., 129 S.W. 2d 439, 442 (Writ Ref.); Shawver v. American Ry. Express Co., Tex.Civ.App., 236 S.W. 800 (Writ Ref.); Bowman v. Farmersville Mill & Light Co., Tex.Civ. App., 158 S.W. 200, 203 (Writ Ref.). See also Pina v. Cape & Vineyard Electric Co., 289 Mass. 85, 193 N.E. 563; Kelly v. Duke Power Co., 4 Cir., 97 F.2d 529, 530; State, for Use of Hoffman v. Potomac Edison Co., 166 Md. 138, 170 A. 568, 572; Bouchon v. New Orleans Ry. & Light Co., 154 La. 397, 97 So. 587, 588; Monongahela West Penn. Public Service Co. v. McNutt, 6 Cir., 13 F.2d 846; Aljoe v. Penn. Cent. Light & Power Co., 281 Pa. 368, 126 A. 759, 761; Bartuluci v. San Juaquin Light & Power Co., 21 Cal.App.2d 376, 69 P.2d 440; Aller v. Iowa Electric Light & Power Co., 227 Iowa 185, 288 N.W. 66, 69; Matlack v. Pennsylvania Power & Light Co., 312 Pa. 206, 167 A. 37, 39; Parker v. Pennsylvania Power Co., 301 Pa. 375, 152 A. 538; Houston Nat. Bank v. Adair, 146 Tex. 387, 207 S.W.2d 374, 376; Proctor v. San Antonio St. Ry Co., 26 Tex.Civ.App.,

148, 62 S.W. 939 (Writ Ref.); Austin v. Public Service Company, 299 Ill. 112, 132 N.E. 458, 17 A.L.R. 795, 802.

■ As stated, the evidence conclusively shows that, although Bobbie Harris knew and appreciated the danger of bringing a pipe in contact with the electric wires, he exercised no care for his own safety. He was, therefore, guilty of contributory negligence as a matter of law, which was the proximate cause of his electrocution.

It is not necessary to discuss other points presented.

The judgment is reversed and judgment is rendered for appellant.