196 So.2d 765 (1967)
Nezzie A. STRICKLAND and Cassius B. Strickland, Her Husband, Appellants,
v.
BRADFORD COUNTY HOSPITAL CORPORATION, a Corporation, Appellee.
No. H-151.
District Court of Appeal of Florida. First District.
February 28, 1967.
Rehearing Denied April 11, 1967.
Bruce & Smith, Jacksonville, for appellants.
James C. Rinaman, Jr., and Mattox S. Hair, of Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, for appellee.
CARROLL, DONALD K., Judge.
The plaintiffs in a negligence action have appealed from a final summary judgment entered for the defendant by the Circuit Court for Bradford County.
The basic question presented for our determination in this appeal is whether the evidence before the court was sufficient to create a genuine issue of a material fact as to the issue of the defendant's negligence so as to preclude the entry of a summary judgment under our procedural rules.
The key provision in Rule 1.36, Florida Rules of Civil Procedure, 30 F.S.A., authorizing the entry of summary judgments and decrees, provides that at the hearing or decree "* * * shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue *766 as to any material fact and that the moving party is entitled to a judgment or decree as a matter of law." The proper application of this provision to the situation in this appeal is our problem here.
In their complaint filed in this cause the plaintiffs, who are husband and wife, allege that on November 28, 1963, the plaintiff Nezzie Strickland was admitted to the defendant's hospital by her attending physician for care and treatment of an injury she had received to her hand; that she was a patient and under the care of the hospital, which, by virtue of accepting her as a patient, the defendant became obligated carefully and skilfully to attend her and render her proper care and treatment; that, notwithstanding its said obligation, the defendant so negligently performed its hospital work, care, and treatment that it caused her to be injured by its careless and negligent failure to care for her properly and permitted her to fall out of the bed in which the defendant had placed her, while she was unconscious, asleep, under the influence of drugs and tranquillizers, and under the defendant's sole custody, control, and supervision; and that, as a result of the fall, the said plaintiff received painful and permanent injuries to her body, and the plaintiff husband incurred medical expenses and lost her services.
To this complaint the defendant filed its answer denying each allegation of the complaint, alleging that Mrs. Strickland was guilty of contributory negligence, and alleging that the defendant is an entity of the State of Florida and entitled to the State's sovereign immunity from action against it by the plaintiffs.
The parties' evidence presented to the court at the hearing on the defendant's motion for a summary judgment supported the above allegations of the plaintiffs' complaint, although the evidence is conflicting on the issue of the defendant's alleged negligence, the issue which is the crux of the present appeal.
On this issue of the defendant's negligence, the said evidence, briefly and substantially stated, shows the following:
In her deposition the plaintiff Nezzie Strickland testified: She was 86 years old, she had crushed and cut her left hand in a home accident and was first treated at the emergency ward of the defendant's hospital. Suffering extreme pain and shock, she was admitted as a patient in the hospital by her treating physician. Her hand was sutured and bandaged and she was administered sedatives and Demerol, a pain-killing drug and then was put in a semi-private room in the hospital. Presumably because of her pain and shock, Mrs. Strickland could not recall the treatment at the hospital and her recollection of what happened there was hazy, other than as to the fact that she was suffering from her injury. She did realize, however, that she was falling from the bed in which she had been placed and that she was picked up from the floor and placed back into bed by a hospital attendant. She also recalled that prior to her fall, there was one bed rail on the side of the bed away from the wall but none on the side facing the wall. She fell between the bed and the wall. As a result of the fall, she sustained a comminated fracture of the hip.
Other evidence before the court showed the following: Mrs. Strickland was admitted to the defendant's hospital at 10 o'clock in the morning of November 29, 1963, and she fell from the hospital bed at about 11:30 o'clock that night. Prior to her fall she was running a temperature above 100 degrees. She had last been given the drug Demerol at 4 o'clock that afternoon, the effects of which drug probably wore off within three or four hours. In the opinion of her treating physician, a combination of Mrs. Strickland's age, abnormally high temperature, and the existence of the pain-producing injury to her left hand at a time when the prescribed drugs of Demerol and Emperin had worn off, would probably produce restlessness on the part of Mrs. Strickland. A hospital employee *767 who found Mrs. Strickland on the floor after her fall testified that she was sitting between the bed and the wall, the bed being about two feet away from the wall.
In an affidavit before the court the plaintiffs' daughter testified that at about 5 o'clock of the afternoon of the day in question, she and her father went to the hospital to visit her mother and about an hour later, when they were leaving, she heard her father "state to the nurse on duty that my mother appeared to be very restless and that there should be side rails put on her bed."
Admittedly, the foregoing summary of the evidence before the court at the hearing on the defendant's motion for a summary judgment emphasizes the evidence as marshalled by the plaintiffs-appellants in their brief in support of their contention that there existed a genuine issue as to the material fact of the defendant's negligence and that, therefore, the defendant was not entitled to a summary judgment as a matter of law. While it is true that there was also other evidence before the court that would support the contrary conclusion, that fact is essentially immaterial in determining the propriety of the entry of a summary judgment under the rules applicable thereto which we will discuss below.
In many decisions the courts of Florida have laid down the rules that govern the entry of summary judgment in negligence and other actions pursuant to Rule 1.36, Florida Rules of Civil Procedure, from which we quoted early in this opinion.
In Beikirch v. City of Jacksonville Beach, 159 So.2d 898 (Fla.App. 1964), we had occasion to summarize the established rules applicable to the entry of summary judgments in negligence actions in this state, saying:
"Some of the greatest problems perplexing the courts with regard to summary judgments seem to have arisen in negligence actions. In several cases involving such actions the Florida appellate courts have observed that ordinarily the issues of negligence and contributory negligence should be resolved by the jury, rather than disposed of by the court in summary judgment proceedings.
"For example, in Drahota v. Taylor Construction Co., Fla., 89 So.2d 16 (1956), the Supreme Court of Florida said in a negligence case in which a summary judgment for the defendant had been entered:
`In City of Williston v. Cribbs, Fla., 82 So.2d 150, we pointed out that the defense of contributory negligence ordinarily presents an issue which should be resolved by the jury. The constitutional right to jury trial demands that particular care be accorded in this field, to the end that controverted issues of fact be resolved not upon pleadings and depositions but by a jury functioning under proper instructions. See Smith v. Poston Bridge & Iron, Inc., Fla., 87 So.2d 581; National Airlines v. Florida Equipment Co., Fla., 71 So.2d 741. * * *'
"After quoting the second sentence in the above quotation from the Drahota case, the District Court of Appeal, Third District of Florida, in Holmes v. Forty-Five Twenty-Five, Inc., 133 So.2d 651 (1961), related that rule to negligence actions as follows:
`* * * Negligence cases are extremely troublesome due to the varied fact situations which they present. It has been held that where the case is extremely close on the question of negligence or contributory negligence, "doubt * * * should always be resolved in favor of a jury trial." Bess v. 17545 Collins Ave., Inc., Fla. 1957, 98 So.2d 490, 492.'
"The District Court of Appeal, Second District of Florida, recognized the same *768 doctrine in Rofer v. Jensen, 141 So.2d 791 (1962), saying:
`* * * The general rule, of course, is that issues of negligence or contributory negligence are to be determined by the jury and ordinarily should not be disposed of by the Court in a peremptory manner. Where the facts are such that reasonable persons may fairly arrive at different conclusions, the question of negligence or contributory negligence should be submitted to a jury. 23 Florida Jurisprudence, Negligence, 129, and cases therein cited. Numerous other additional authorities may, of course, be cited but the rule is so well established that it is deemed unnecessary. * * *'
"A third rule that is useful in determining the merits of the present appeal is that adverted to in the above quotation from the Holmes case  that when the question of negligence or contributory negligence is extremely close, doubt should always be resolved in favor of a jury trial. This rule was recognized and applied by the Supreme Court of Florida in Bess v. 17545 Collins Avenue, Inc., Fla., 98 So.2d 490 (1957), involving a summary judgment. The Supreme Court said:
`We feel this to be a case extremely close on the question of negligence and contributory negligence and in such cases the doubt thereon should always be resolved in favor of a jury trial. * * *'
"In order to place the above three rules in proper perspective, we point out that, despite these rules, the researcher can uncover many negligence cases in which the courts of this state have entered or affirmed summary judgment. In such cases, we must assume that the courts were aware of the said rules and determined that the question of negligence or contributory negligence was not an `extremely close' one, that the evidence was not susceptible of conflicting inferences, and that the case was not an `ordinary' case but so extraordinary as to justify the court's determining the questions of fact without submitting them to the jury.
"What we say in this opinion, therefore, should not be taken as a holding that a summary judgment should never be entered in a negligence action upon the issues of negligence or contributory negligence. What we do hold is that, when a trial court is considering a motion for summary judgment in a negligence action, the court should always keep in mind and apply the three rules discussed herein before ruling upon such motion.
"Applying the said rules to the record on appeal before us, we think that the evidence was susceptible of conflicting inferences on the issues of the defendant's negligence and the plaintiff wife's contributory negligence. At best, the question is extremely close. Under the applicable rules, those issues of fact should be submitted to, and determined by, a jury."
Applying the foregoing rules to the case at bar, we have reached the conclusion that, construing, as we must, the evidence most strictly against the defendant-movant, a jury could have reasonably found from such evidence that the defendant was guilty of negligence that proximately caused the injuries sustained by the plaintiff Nezzie Strickland when she fell from her hospital bed. It may well be, too, that reasonable men could make the opposite finding  but this issue of the defendant's negligence and proximate cause was a question of fact for the determination of a jury, under appropriate instructions, not for the determination of a trial or appellate court.
We think that the jury could have reasonably concluded from the evidence detailed earlier in this opinion that the defendant had the duty to take steps to protect *769 Mrs. Strickland from the danger of falling out of her hospital bed, especially in view of the facts that she was elderly, that she was in a strange bed, that she was suffering from shock and pain following an injury to and operation on her hand, that the effect of the pain-killing drugs that had been given her had worn off and she was getting restless, and that the defendant's agents knew or should have known these facts. Under such circumstances the jury could have reasonably considered, from the evidence under the court's instructions and from their common experience, that the defendant should have placed a bed rail on both sides of her bed, or placed a bed rail on one side of her bed and pushed the other side firmly against a wall, or take other steps to see that she would not fall from the bed.
The Florida case which we have found involving facts most nearly comparable to those in the case on appeal is North Shore Hospital, Inc. v. Luzi, Fla.App., 194 So.2d 63, opinion filed on January 10, 1967. That was an action for medical malpractice tried before a jury, which returned a verdict for the plaintiff, and the defendant-hospital appealed to the District Court of Appeal, Third District of Florida, from the judgment against it, principally contending that the evidence at the trial was insufficient to support the verdict. The evidence showed that the plaintiff, a patient at the defendant hospital, was operated on for an acute gall bladder disease. On the day of the operation, after being in the recovery room, he was "returned to his room at 6:15 P.M. Approximately five hours later, the plaintiff fell off, or got off, the end of the bed. There was evidence that only the side rails near the plaintiff's head were up." About 21 hours later the plaintiff went into shock. In affirming the judgment appealed from, the Third District Court of Appeal said that, viewing the evidence in the light most favorable to the plaintiff "* * * it would appear that the jury might have reasonably found that the plaintiff's fall and subsequent shock was caused by the hospital's negligence in failing to adequately restrain a patient in a semi-conscious, confused condition, even though the hospital may not have been found to have a duty to provide special nurses for such a patient."
In the judgment appealed from herein the Circuit Court entered a final summary judgment for the defendant on two grounds: first, that there was no evidence to create a genuine issue of material fact as to the defendant's negligence; and, secondly, that the plaintiff Nezzie Strickland was an indigent patient at the hospital, so the defendant was entitled to the protection of the sovereign immunity of the State of Florida from any suit by her. The question of the validity of such a rule, assuming her indigency, is not before us in this appeal, and nothing we say here should be taken as an expression of our views concerning such validity in cases of this kind.
The first ground we have, of course, discussed at length above. As to the court's finding in the second ground of its judgment, that Mrs. Strickland was an indigent or non-paying patient of the hospital, the evidence before the court  like that on the issue of the defendant's negligence  was in conflict or, more accurately, was reasonably susceptible of conflicting inferences of fact. Some of the evidence indicated that Mrs. Strickland was an indigent patient, while other evidence would support a contrary conclusion, including testimony that the hospital presented to her a bill for its services to her, which bill she later paid. In such circumstances, under the rules discussed above pertaining to summary judgments, the issue of indigency was a question of fact for a jury, not for the court in a summary judgment proceeding. The question of indigency was involved in one of the defensive issues raised by the defendant in its answer.
For the foregoing reasons the final summary judgment appealed from herein must be and it is reversed and the cause remanded with directions for further proceedings *770 consistent with the views expressed herein.
Reversed and remanded with directions.
WIGGINTON, Acting C.J., and SACK, J., concur.