202 So.2d 568 (1967)
Erin Colleen MOORE, a Minor by and through Her Next Friend, R.E. Moore, and R.E. Moore, Individually, Appellant,
v.
HALIFAX HOSPITAL DISTRICT, a Special Taxing District in and for Volusia County, Florida, Appellee.
No. I-358.
District Court of Appeal of Florida, First District.
September 28, 1967.
James H. Tucker, Daytona Beach, for appellant.
Green & Strasser, Daytona Beach, for appellee.
CARROLL, DONALD K., Acting Chief Judge.
The plaintiffs in a negligence action have appealed from a final judgment for the defendant hospital, entered by the Circuit Court for Volusia County, based upon a directed verdict for the defendant.
The complaint, filed by a minor child and her father as next friend and individually, alleges that, while she was a patient in the hospital, the minor plaintiff sustained certain injuries to her left arm which were proximately caused by the negligence of agents of the defendant hospital. The defendant answered denying each allegation *569 of the complaint. At the close of the plaintiff's evidence in the jury trial, the trial court, on motion, granted a directed verdict in favor of the defendant. The ultimate question for our determination in this appeal is, therefore, whether it was error under the applicable rules to direct a verdict in the state of the evidence before the jury.
The rules relating to directed verdicts in Florida are well established and have been clearly articulated in a number of appellate opinions. In Burch v. Strange, 126 So.2d 898 (Fla.App.1st, 1961), for example, this court summarized those rules as follows:
"The power to direct a verdict should be cautiously exercised, and a motion for a directed verdict should never be granted unless the evidence is such that under no view which the jury might lawfully take of the evidence favorable to the adverse party could a verdict for the latter party be sustained. Metropolitan Life Ins. Co. v. Jenkins, 1943, 152 Fla. 486, 12 So.2d 374; Katz v. Bear, Fla. 1951, 52 So.2d 903.
"A motion for a directed verdict admits for the purpose of such motion the facts in evidence and every reasonable and proper conclusion based thereon which is favorable to the adverse party. Hartnett v. Fowler, Fla. 1957, 94 So.2d 724. One moving for a directed verdict against his opponent admits not only the facts shown by the evidence but also admits every reasonable inference favorable to his opponent that a jury might fairly and reasonably arrive at from the evidence. Cutchins v. Seaboard Air Line R. Co., Fla. 1958, 101 So.2d 857."
In other words, in granting a directed verdict the trial court, viewing the evidence in the light most favorable to the nonmoving party, must conclude that such party, as a matter of law, could not legally be successful if the evidence were submitted to the jury. Furr v. Gulf Exhibition Corporation, 114 So.2d 27 (Fla.App. 1959).
Applying the above-stated rules to the instant case, therefore, the precise question for our determination in this appeal is as follows: Was there substantial competent evidence, or sufficient reasonable inferences from such evidence, from which the jury could have lawfully found that the defendant hospital, through its agents, was guilty of negligence which proximately caused the injuries to the minor plaintiff? If so, the trial court erred in granting the directed verdict for the defendant. This question can be resolved by examining the evidence in this cause.
The evidence adduced at trial, briefly and substantially stated, is as follows:
On February 5, 1964, the minor plaintiff, a six-year-old girl, was admitted to the defendant hospital for the purpose of an operation on her eyes. On the following day surgery was performed and the child was returned to her hospital room from the recovery room at approximately 8:45 P.M. At that time, she was in a semi-conscious, heavily-sedated condition and had dressings over both eyes. In order to prevent her from touching those dressings, "restraining boards," apparently covered with some sort of cloth, had been taped one to each arm. Upon examining these boards, a nurse decided that they were not sufficient to prevent the child from reaching her eyes and so replaced them with smaller boards, two of which were taped to each arm with a considerable amount of tape. At the time when the boards were switched, there was no evidence of injury to either of the child's arms. The nurse who had supervised changing the boards testified that she checked the circulation in the child's arms on several occasions from the time the boards were changed until she went off duty at 11:15 P.M. and found no circulation difficulty.
Mrs. Virginia Cooper, R.N. in charge from 3 to 11, testified that the child's arms were checked every 15 minutes until 11:00 P.M., and, had any complaint been made, the restraints would have been removed. She estimated that the pediatrics ward *570 placed restraints on about 75 patients a month. There is no evidence that the night shift took the same precautions as did Mrs. Cooper. However, there is evidence that the night shift nurses did see the child periodically during the night and were aware that the child was struggling and was complaining about her arm.
The minor plaintiff's mother, who stayed in the hospital room throughout the night, testified that sometime after the boards were switched, the child began to groan, complain, and move her arms about; that she seemed to be trying to reach for her left arm and finally began to say "my arm, my arm." At that, the mother began to grow concerned, told one of the nurses who had just come on duty of the complaints about the arm, and asked her to determine whether or not the boards were too tight. The nurse checked the arm and said that the boards were not too tight. The mother further testified that, even though the child slept intermittently during the remainder of the night, she continued to struggle and complain at times about her arm.. About 9:00 o'clock the following morning, when the boards were removed, two "blood red spots" were found on the child's left elbow and, according to her mother, the left arm seemed pressed "as if it had been in a vise." The hospital record on the condition of the arm at that time states: "Two red areas on elbow, left raised, very hot to touch. Child complaining with pain in area. Elbow swollen." After the boards were removed, considerable swelling developed in the arm and as a result of the injury, the child had considerable difficulty with the arm for some time thereafter. An orthopedic surgeon who treated the injury after the child left the hospital testified that within the realm of reasonable medical probability the injury was caused by "some external mechanical pressure" which could have resulted either from the restraining boards being too tight or from the child's struggles against the boards to reach her eyes. The expert could not, however, determine which, if either alone, actually caused the injury.
Viewing the above-stated evidence and all evidence in the record in the light most favorable to the plaintiffs, we believe that there was substantial competent evidence from which the jury as reasonable men could have lawfully found that the defendant hospital, through its agents, was guilty of negligence which proximately caused the injuries to the minor plaintiff. For example, it could have believed that the injury was the result of fastening the restraining boards too tightly on the child's arm. On the other hand, the jury could have considered the hospital employees negligent in failing to prevent the child from struggling against the boards, particularly in view of the child's age and condition and the fact that the defendant had notice of the possibility of injury. It is well established that a greater standard of care should be exercised in the treatment of the very young or very old particularly if they are under sedation and in a semiconscious condition. See Strickland v. Bradford County Hospital Corp., 196 So.2d 765 (Fla.App.1st, 1967). In any case, we certainly cannot say that, as a matter of law, the plaintiff could not be legally successful if the evidence were submitted to the jury.
In granting the motion for directed verdict for the defendant, the trial court said in part:
"Gentlemen of the Jury, the Court has determined that there isn't any evidence in the case upon which the jury could lawfully find for the plaintiffs because the medical testimony by Dr. Davis indicates that there might be two causes of this injury to the soft tissues of the elbow, one the negligent cause of putting the boards on too tight, and the other the non-negligent cause of the child struggling to reach her eyes with the arm which had been restrained, that being a non-negligent cause as far as the hospital is concerned."
*571 In connection with this question, he also commented that the jury could not be allowed to "speculate" or "guess" as to which of the two possible causes shown by the evidence was the proximate cause of the injury.
The record shows that the above rationale was based upon the trial court's interpretation of the opinions by the District Court of Appeal for the Third District of Florida in Lane v. White et al., 167 So.2d 14 (1964) and LePrince v. McLeod, 171 So.2d 189 (1965). The trial court apparently interpreted those opinions as holding that, where there is testimony as to both negligent and non-negligent causes of an injury, the jury should not be permitted to speculate as to which was the proximate cause. Assuming that this was a correct interpretation of those decisions and that those decisions correctly represent the law of Florida, both cases are clearly distinguishable from the case at bar in that in the present case the jury could have reasonably found that both of the possible causes of the injury, which were alluded to by the medical expert, were the result of negligence on the part of agents of the defendant hospital. In other words, it cannot be said as a matter of law that either possible cause was "non-negligent." In holding that the defendant's failure to prevent the child from struggling against the restraining boards did not constitute negligence, the trial court was substituting its judgment for that of the jury which had the duty of determining whether either or both of the possible causes shown by the evidence constituted negligence and which, if either, was the proximate cause of the minor plaintiff's injury. In so doing, the jury would not be "speculating," but would be rightfully determining from the evidence the questions of negligence and proximate cause. Where, as here, there is substantial competent evidence upon which the jury could lawfully decide these issues, questions of negligence and contributory negligence should be resolved by the jury and not disposed of by the courts. See Beikirch v. City of Jacksonville Beach, 159 So.2d 898 (Fla.App.1st, 1964).
In view of the above, we believe that in granting the motion for a directed verdict at the close of the plaintiffs' evidence, the trial court invaded the province of the jury, the lawful trier of the facts, and thus committed reversible error. For these reasons, therefore, the final judgment for the defendant should be, and it is, reversed and the case is remanded for a new trial by jury.
Reversed.
RAWLS and JOHNSON, JJ., concur.